2002 ND 44

**Cody Darrell HENDERSON, Petitioner and Appellee,**

v.

**DIRECTOR, NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

**No. 20010222.**

Supreme Court of North Dakota.

March 12, 2002.

Vince H. Ficek, Ficek & Buresh, P.C., Dickinson, for petitioner and appellee.

Reid Alan Brady (argued) and Andrew Moraghan (appeared), Assistant Attorneys General, Bismarck, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] The Department of Transportation ("Department") appealed a district court judgment reversing the Department's decision suspending Cody Darrell Henderson's driving privileges for 91 days. We reverse the judgment and remand for entry of a judgment affirming the Department's decision.

I

[¶ 2] On January 14, 2001, Adams County Deputy Sheriff Darrin Heinert arrested Henderson for driving a vehicle in violation of N.D.C.C. § 39–08–01, which prohibits driving with a blood alcohol concentration of at least ten one-hundredths of one percent by weight or while under the influence of intoxicating liquor. After an administrative hearing, the hearing officer found, among other things:

An Intoxilyzer test was given to Mr. Henderson by a certified operator and on an approved device at 1:38 a.m. The Intoxilyzer test was given within two

hours from the time of driving. The approved method was followed. The Intoxilyzer test results show Mr. Henderson had an alcohol concentration of .11.

The hearing officer concluded:

Deputy Heinert had sufficient reason to approach the stopped vehicle. He had reasonable grounds to believe Mr. Henderson had been driving a vehicle in violation of section 39–08–01 or equivalent ordinance. Mr. Henderson was arrested. He was properly tested. Mr. Henderson had an alcohol concentration of at least ten one-hundredths of one percent by weight.

The hearing officer's decision suspended Henderson's driving privileges for 91 days.

[¶ 3] Henderson appealed to the district court. The court stated in its memorandum decision:

Under the facts disclosed at the hearing, I cannot see how the respondent was in actual physical control of anything other than a shovel. The hearing examiner's findings and conclusion are simply not supported by the evidence.[1]

The court reversed the administrative decision. A judgment was entered reversing the Department's decision and reinstating Henderson's driving privileges.

II

[¶ 4] On appeal, Henderson, in support of the district court judgment reversing the Department's decision, contends (1) the hearing officer erred in finding he was driving while under the influence, based solely upon his admission he was driving

---

1. The district court apparently thought Henderson had been arrested for being in actual physical control of a vehicle in violation of N.D.C.C. § 39–08–01. It is clear, however, from Deputy Heinert's testimony and the hearing officer's findings, that Heinert arrested Henderson for driving a vehicle in violation of N.D.C.C. § 39–08–01, not for having been in actual physical control of a vehicle in violation of the statute, and that the hearing officer concluded Heinert had reasonable grounds to believe Henderson had been driving a vehicle, not in physical control of a vehicle, in violation of the statute.

after consuming alcoholic beverages; (2) the admission was inadmissible; and (3) the Intoxilyzer test was not fairly administered. The Department raises the same issues, but argues there was no error on the part of the hearing officer.

[¶ 5] Section 39–20–05(2), N.D.C.C., prescribes the issues to be determined at the hearing granted at Henderson's request:

> The hearing . . . may cover only the issues of whether the arresting officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle in violation of section 39–08–01 or equivalent ordinance . . . whether the person was placed under arrest . . . whether the person was tested in accordance with section 39–20–01 or 39–20–03 and, if applicable, section 39–20–02; and whether the test results show the person had an alcohol concentration of at least ten one-hundredths of one percent by weight. . . .

Section 39–20–06, N.D.C.C., provides for limited judicial review in the district court on the administrative record, providing, in part: "No additional evidence may be heard. The court shall affirm the decision of the director or hearing officer unless it finds the evidence insufficient to warrant the conclusion reached by the director or hearing officer."

[¶ 6] This Court exercises a limited review in appeals involving drivers' license suspensions or revocations. Under N.D.C.C. ch. 28–32, "[w]hen reviewing a driver's license suspension, we review the agency's decision, not the district court's decision." *Morrell v. North Dakota Dep't of Transp.*, 1999 ND 140, ¶ 6, 598 N.W.2d 111. We affirm the agency's decision unless:

> "1) a preponderance of the evidence does not support the agency's findings; 2) the agency's findings of fact do not support its conclusions of law and its decision; 3) the agency's decision violates the constitutional rights of the appellant; 4) the agency did not comply with the Administrative Agencies Practice Act in its proceedings; 5) the agency's rules or procedures have not afforded the appellant a fair hearing; or 6) the agency's decision is not in accordance with the law."

*Morrell*, at ¶ 6, quoting *Dworshak v. Moore*, 1998 ND 172, ¶ 6, 583 N.W.2d 799.[2] "Resolving underlying factual disputes is the exclusive province of the hearing officer." *Houn v. North Dakota Dep't of Transp.*, 2000 ND 131, ¶ 6, 613 N.W.2d 29.

> We give great deference to the Department's findings of fact, and we do not make independent findings or substitute our judgment for that of the Department; rather, we determine only whether a reasoning mind reasonably could have concluded the Department's findings were supported by the weight of the evidence from the entire record.

*Id.* That limited review "defers to the hearing officer's opportunity to hear the witnesses' testimony and to judge their credibility." *Id.* In reviewing a suspension of a license, we do not defer to the hearing officer's probable cause conclusion, because probable cause is fully reviewable on appeal, but we do defer to the findings of fact if they are supported by the evidence. *Baer v. Director, N.D. Dep't of Transp.*, 1997 ND 222, ¶ 7, 571 N.W.2d 829.

**2.** We note N.D.C.C. § 28–32–46 adds additional grounds for not affirming an administrative agency decision, effective August 1, 2001. Although the district court judgment was dated August 28, 2001, the appeal from the Department's decision was filed February 6, 2001, and former § 28–32–19, N.D.C.C., applies.

## A

[¶ 7] Henderson contends the hearing officer erred in finding he was driving while under the influence, based solely on his admission he was driving after consuming alcoholic beverages.

[¶ 8] "The term 'reasonable grounds' is synonymous with the term 'probable cause.'" *Moser v. North Dakota State Hwy. Comm'r*, 369 N.W.2d 650, 652 (N.D.1985). "Probable cause to arrest exists when the facts and circumstances within police officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed." *Fargo v. Egeberg*, 2000 ND 159, ¶ 8, 615 N.W.2d 542. "Probable cause does not require the commission of an offense to be established with absolute certainty, or beyond a reasonable doubt." *Id.* at ¶ 10.

[¶ 9] Deputy Heinert testified: (1) While on patrol at 12:40 a.m. on January 14, 2001, he observed a pickup which had not been there when he drove past about 20 minutes earlier, stuck in a snowbank and Henderson "next to the driver's side door shoveling"; (2) "I walked down to offer assistance"; (3) "I was talking to him, and I asked him what had happened. And he said that he had just driven down there to see who was fishing and got stuck"; (4) "I observed him to have a very strong odor of alcoholic beverage on his breath. His speech was also slurred. At that time, I asked him if he had ... if he was the driver at the time, and he said yes"; (5) While he was talking to Henderson, he observed an unopened can of beer on the floor; (6) "Prior to asking him to go to the patrol car, I asked him if he had anything to drink, because I did smell the alcohol on him" and "[h]e said he had two or three before they had come down"; (7) In the patrol car, Henderson failed an HGN field sobriety test, and consented to take an Intoxilyzer S D2 test, which indicated an "estimated alcohol ... concentration of .106 percent"; (8) Heinert arrested Henderson for "[d]riving under the influence of alcohol"; and (9) Heinert followed the state toxicologist's approved method for giving an Intoxilyzer 5000 test when he gave the test to Henderson at 1:38 a.m., and the test showed a test result of ".11". On cross-examination, Heinert testified: (1) He did not see Henderson drive the vehicle or see him behind the wheel of the vehicle; (2) the vehicle was running; (3) Jessie Zahn was seated on the passenger side of the vehicle; (4) He "didn't know who the actual driver of the vehicle was ... until I asked"; and (5) He did "detect the odor of alcoholic beverage prior to asking him if he had been the driver of the vehicle". On questioning by the hearing officer, Heinert said neither Henderson nor Zahn told him Zahn was driving.

[¶ 10] Henderson testified: (1) He drove to Mirror Lake; (2) He had not "consumed any alcoholic beverages" until he arrived at the lake; (3) He drank three beers while walking around at the lake; (4) It was Jessie who started the vehicle to leave; (5) Jessie was outside while he was shoveling but got "in the passenger seat because the passenger defrost in my vehicle is the only one that works"; and (6) He tried to tell Heinert he was not the driver when Heinert arrived.

[¶ 11] Jessie Zahn testified: (1) Henderson did not consume any alcoholic beverages until they drove to the lake; (2) Henderson drove down to the lake; (3) Henderson asked her to drive back; (4) When she "tried to back out, it wouldn't move, so we got out and started to try and dig it out"; (5) she was in the passenger side of the vehicle to warm her hands and Henderson was outside when the officer

arrived; (6) Henderson "admitted that he drove down there, but he was trying to tell the officer that he wasn't the one who got in the vehicle and started the vehicle up and wanted . . . [to] drive it out".

[¶ 12] From our review of the evidence before the hearing officer in the administrative hearing, we conclude a reasoning mind reasonably could have concluded the Department's finding that Deputy Heinert had reasonable grounds to believe Henderson had been driving a vehicle in violation of N.D.C.C. § 39–08–01 was supported by the weight of the evidence from the entire record.

### B

[¶ 13] Henderson contends his statements about driving and consuming alcoholic beverages were inadmissible because he was in custody at the time of the statements and had not been given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The *Miranda* court held in criminal prosecutions statements made by suspects in police custody may not be used against them, unless, before police questioning begins, the suspect is warned he has a right to remain silent, any statement he makes may be used against him, and he has a right to the presence of an attorney. "[T]he warnings have become part of our national culture." *Dickerson v. United States*, 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). "[C]ustody is the determinative factor in deciding if the *Miranda* warnings are required." *State v. Fields*, 294 N.W.2d 404, 407 (N.D.1980). "[A]n officer may learn something during a caretaking or casual encounter that leads to a reasonable suspicion and that reasonably justifies further investigation, a seizure, or even an arrest." *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992).

[¶ 14] This is not a criminal prosecution and, furthermore, Henderson did not object to any of the testimony about Henderson's admissions. "Failure to raise an issue at the administrative hearing normally precludes review by this Court." *Bieber v. North Dakota Dep't of Transp. Dir.*, 509 N.W.2d 64, 68 (N.D. 1993). In any event, apart from Henderson's statements, "there were still numerous other factors remaining which supported the hearing officer's finding of probable cause to arrest." *McNamara v. North Dakota Dep't of Transp.*, 500 N.W.2d 585, 592 (N.D.1993). Thus, we need not further consider Henderson's *Miranda* argument.

### C

[¶ 15] Henderson contends the Intoxilyzer test was not fairly administered. He argues:

Further, the only evidence of consumption was approximately 2–3 beers which was consumed in a period of 20 minutes after the driving. The accuracy of the test is in question because 2–3 beers does not rise to a .11 particularly when we all know that alcohol is being absorbed into the system as well as eliminated from the system and in the time period talked about his alcohol content would have been on the upswing. The date was misprinted or not shown on the form. The SD2 test which was not accepted into evidence but was a .106 shows that at the time of the arrest or shortly before the arrest, he was at a .106 which means that 20 minutes before that SD2 test he was probably under .10. The approved method was not followed. They should have reprinted the test.

Henderson presented no expert testimony or other evidence to support his assertions. Henderson's conclusory assertions "2–3 beers does not rise to a .11" and "his

alcohol content would have been on the upswing" are without merit.

 [¶ 16] Under N.D.C.C. § 39–20–07(5), the results of chemical analysis to determine blood alcohol content must be received in evidence if the test sample was properly obtained, and the test was fairly administered and shown to have been performed in accordance with methods and devices approved by the state toxicologist. " 'Absent testimony by the state toxicologist, the foundational requirement necessary to show fair administration of a breathalyzer test and admissibility of the test results is a showing that the test was administered in accordance with the approved methods filed with the clerk of the district court.' " *Ringsaker v. Director, N.D. Dep't of Transp.*, 1999 ND 127, ¶ 8, 596 N.W.2d 328, quoting *Moser v. North Dakota State Hwy. Comm'r*, 369 N.W.2d 650, 653 (N.D.1985).

 [¶ 17] Deputy Heinert testified he followed the state toxicologist's approved method in giving an Intoxilyzer 5000 test to Henderson. The test result, Form 106 I, printed " *5/*5/*8", and no correct date. Deputy Heinert wrote a date of "01/14/01" on the test result. The hearing officer found the approved method was followed, and concluded Henderson was properly tested. As to a misprinted date on a test result, we have said that "when the date fails to print accurately, it raises questions regarding the trustworthiness of the entire test result." *Ringsaker*, 1999 ND 127, ¶ 10, 596 N.W.2d 328. Perhaps as a result of our decision in *Ringsaker*, the state toxicologist's approved method for conducting an Intoxilyzer breath test filed in this case now says: "If an asterisk ' * ' is included in the date or an incorrect date is printed, the operator shall write the correct date on the Form 106 I. This alone will not cause the test to be invalid." Reliability and accuracy of

the test result was " 'established by demonstrating compliance with the methods adopted by the state toxicologist.' " *Ringsaker*, at ¶ 8, quoting *Moser*, 369 N.W.2d at 653. We conclude the Intoxilyzer test was fairly administered and the hearing officer reasonably found the approved method was followed and Henderson was properly tested.

### III

[¶ 18] The judgment is reversed and the matter is remanded for entry of an order affirming the hearing officer's decision.

[¶ 19] SANDSTROM, NEUMANN, MARING, and KAPSNER, JJ., concur.