2003 ND 90

**Jeffrey S. SONSTHAGEN, Petitioner and Appellant,**

v.

**David A. SPRYNCZYNATYK, Director, Department of Transportation, Respondent and Appellee.**

No. 20020297.

Supreme Court of North Dakota.

June 5, 2003.

Rehearing Denied July 23, 2003.

Reid Alan Brady (submitted on brief), Assistant Attorney General, Attorney General's Office, Bismarck, N.D., for respondent and appellee.

Jeffrey S. Sonsthagen (argued), pro se, Fargo, N.D., petitioner and appellant.

MARING, Justice.

[¶ 1]   Jeffrey Sonsthagen appeals from the district court's September 27, 2002, Memorandum Opinion and Order[1] affirming the North Dakota Department of Transportation's decision to revoke Sonsthagen's driving privileges for two years. We affirm.

I

[¶ 2]   On June 14, 2002, a North Dakota Highway Patrol Officer was traveling northbound through a construction zone on Interstate 29 in Fargo.  The officer noticed Sonsthagen's vehicle approaching the Interstate from the on-ramp and traveling at what the officer believed was a speed in excess of the posted speed limit.  Sonsthagen's vehicle failed to yield as it entered the Interstate.  As a result, the officer stopped the vehicle.  The officer approached the vehicle, and as Sonsthagen rolled down his window, the officer detected a strong odor of marijuana coming from inside.  The officer also observed Sonsthagen's eyes were red and squinty.  The officer asked Sonsthagen to step out of his vehicle and to perform several field sobriety tests including an ABC test, a sway test, a counting test, a walk-and-turn test, and a one-leg stand test.  Sonsthagen failed the sway test, the walk-and-turn test, and the one-leg stand test.  The officer placed Sonsthagen under arrest for driving a motor vehicle under the influence of drugs and transported him to the Cass County Correctional Center.

[¶ 3]   Once at the correctional center, the officer read Sonsthagen the implied consent advisory and asked him to submit to a urine test.  Sonsthagen asked to speak to a lawyer, so the officer provided him with a telephone book.  After attempt-

---

1. Because a judgment consistent with the memorandum opinion and order was entered on October 15, 2002, we treat this as an appeal from the judgment.  *See Flattum–Riemers v. Flattum–Riemers,* 2003 ND 70, ¶ 4 n. 2, 660 N.W.2d 558.

ing to contact a lawyer, Sonsthagen informed the officer he would not speak to him anymore. Considering Sonsthagen's statement as a refusal to take the urine test, the officer took possession of Sonsthagen's license and issued a Report and Notice of the director's intent to revoke his driving privileges.

[¶ 4] An administrative hearing was held on July 9, 2002. The hearing officer concluded that the officer had reasonable grounds to believe Sonsthagen was driving a vehicle while under the influence of drugs, that Sonsthagen was placed under arrest, and that Sonsthagen refused to submit to the urine test. Therefore, Sonsthagen's driving privileges were revoked for two years.

[¶ 5] Sonsthagen appealed the administrative decision to the district court. A hearing was held on September 16, 2002, and the court issued its Memorandum Opinion and Order on September 27, 2002, affirming the administrative decision. The judgment was entered on October 15, 2002. Sonsthagen appeals.

[¶ 6] On appeal, Sonsthagen argues the hearing officer erroneously concluded the arresting officer had reasonable grounds to believe Sonsthagen was driving while under the influence of drugs' because: 1) the hearing officer erred in his evidentiary rulings and failed to conduct the hearing in a fair and impartial manner; and 2) the hearing officer's findings of fact do not support his conclusions of law. We do not agree with Sonsthagen's contentions.

## II

[¶ 7] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs review of administrative decisions to suspend or revoke a driver's license. *See Buchholz v. North Dakota Dep't of Transp.*, 2002 ND 23, ¶ 6, 639 N.W.2d 490. We review the administrative agency's de-

cision, not the district court's decision, by examining the record that was before the agency. *See id.* The agency's decision must be affirmed unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46. We give great deference to administrative agency rulings by not making independent findings of fact or substituting our own judgment for that of the agency. *See Baer v. North Dakota Dep't of Transp.*, 1997 ND 222, ¶ 7, 571 N.W.2d 829. Rather, "we determine only whether a reasoning mind could reasonably have determined the facts or conclusions were supported by the weight of the evidence." *Id.* (quoting *Wheeling v. Director of North Dakota Dep't of Transp.*, 1997 ND 193, ¶ 5, 569 N.W.2d 273). "However, the ultimate conclusion of whether the facts meet the legal standard,

rising to the level of probable cause, is a question of law, fully reviewable on appeal." *Id.*

III

[¶ 8] Sonsthagen first argues the hearing officer failed to comply with the Administrative Agencies Practice Act because he did not follow the North Dakota Rules of Evidence and was not fair and impartial. We disagree.

A

[¶ 9] According to N.D.C.C. § 28–32–24(1), the admissibility of evidence in administrative hearings is to be determined in accordance with the North Dakota Rules of Evidence. The appropriate standard of review for evidentiary rulings in an administrative hearing is an abuse of discretion standard. *See Knudson v. Director, North Dakota Dep't of Transp.*, 530 N.W.2d 313, 316 (N.D.1995). An abuse of discretion occurs if a hearing officer acts in an arbitrary, unreasonable, or capricious manner or if the hearing officer misinterprets or misapplies the law. *See id.*

[¶ 10] Sonsthagen argues the hearing officer abused his discretion by not sustaining several of Sonsthagen's objections. For his argument, Sonsthagen relies upon N.D.R.Ev. 702 which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

During the officer's testimony, Sonsthagen made several foundational objections, claiming the officer was not a trained drug recognition expert and, therefore, could not testify about the field sobriety tests that were conducted.

[¶ 11] In *Fargo v. McLaughlin*, 512 N.W.2d 700, 707 (N.D.1994), we stated the results of sobriety testing can be introduced as evidence of an officer's "physical observations to support the officer's opinion that the accused was intoxicated." However, in order for a law enforcement officer to testify about the results of field sobriety tests, foundation for the testimony must first be established. *See id.* We explained, "the only foundation required is a showing of the officer's training and experience in administering the test, and a showing that the test was in fact properly administered." *Id.* at 708.

[¶ 12] In this case, the officer testified he had the training and experience necessary to conduct the tests he performed, including the sway test, the walk-and-turn test, and the one-leg stand test. The officer further testified that although the tests he performed were designed primarily to detect alcohol impaired drivers, he was also trained that "people under the influence of drugs also demonstrate some of [the] same ... problems when you test them." Because the officer had the necessary training and experience to administer the tests, and because there was no dispute as to the proper administration of the tests, the requisite foundation for the testimony was established. The results of the sobriety tests evidenced Sonsthagen's physical impairment which was in issue. Therefore, it was permissible for the officer to testify about the field sobriety tests he was trained to perform. The hearing officer did not abuse his discretion in allowing the officer to testify about the performance and results of field sobriety tests on Sonsthagen.

B

[¶ 13] Sonsthagen next asserts the hearing officer failed to be fair and

impartial. Sonsthagen points to the hearing officer's interruption of questioning and "skewed factual findings" to support his allegation of impartiality. However, Sonsthagen never listed this issue in his specifications of error and never raised this argument to the trial court.

[¶ 14] According to N.D.C.C. § 28–32–42(4), a party appealing an administrative agency's decision must file specifications of error "specifying the grounds on which the appeal is taken, ..." In an appeal from an administrative hearing, the specifications of error must be sufficiently specific to identify the particular issues asserted on appeal. *See Vetter v. North Dakota Workers Comp. Bureau*, 554 N.W.2d 451, 453–54 (N.D.1996). "The purpose of the specificity requirement is 'to alert both the Commissioner and the trial court about what matters are truly at issue.'" *See id.* at 453 (quoting *Palbicki v. Commissioner of Public Safety*, 347 N.W.2d 512, 515 (Minn.App.1984)). We have previously cautioned parties about filing "boilerplate" specifications of error. *See Isaak v. Sprynczynatyk*, 2002 ND 64, ¶ 7, 642 N.W.2d 860 (explaining that "boilerplate" specifications of error are those that are "so general [they] could apply to any administrative agency appeal"); *Vetter*, at 453–54; *Held v. North Dakota Workers Comp. Bureau*, 540 N.W.2d 166, 171 (N.D.1995) (Sandstrom, J., concurring). Sonsthagen's specifications of error were not sufficiently specific to identify the impartiality argument he now raises on appeal. Because Sonsthagen failed to satisfy the requirements of N.D.C.C. § 28–32–42(4), we will not consider this argument.

## IV

[¶ 15] Sonsthagen's final argument is that the hearing officer's findings of fact do not support the conclusions of law. We disagree.

[¶ 16] When a driver refuses to submit to chemical testing for intoxication, the driver can request an administrative hearing. *See* N.D.C.C. § 39–20–05(1). The issues to be determined at the hearing are whether the law enforcement officer had reasonable grounds to believe the person was driving while under the influence, whether the person was placed under arrest, and whether the person refused to submit to the testing. *See* N.D.C.C. § 39–20–05(3). The hearing officer in this case concluded all three elements were proven and, as a result, revoked Sonsthagen's driver's license for two years. Sonsthagen asserts the hearing officer improperly concluded the officer had reasonable grounds to believe Sonsthagen was driving under the influence of drugs.

[¶ 17] The term "reasonable grounds" is synonymous with the term "probable cause." *See Henderson v. Director, North Dakota Dep't of Transp.*, 2002 ND 44, ¶ 8, 640 N.W.2d 714. "Probable cause to arrest exists when the facts and circumstances within police officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed." *Id.* (quoting *Fargo v. Egeberg*, 2000 ND 159, ¶ 8, 615 N.W.2d 542). When making a probable cause determination, we consider the totality of the circumstances. *See State v. Holzer*, 2003 ND 19, ¶ 10, 656 N.W.2d 686. Whether probable cause exists is a question of law, fully reviewable on appeal. *See Baer*, 1997 ND 222, ¶ 7, 571 N.W.2d 829. We have not previously determined what is necessary to establish probable cause to arrest a driver for driving under the influence of drugs.

[¶ 18] Section 39–08–01(1), N.D.C.C., prohibits driving while under the influence

of intoxicating liquor or other drugs or substances:

1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

a. That person has an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle.

b. That person is under the influence of intoxicating liquor.

c. That person is under the influence of any drug or substance or combination of drugs or substances to a degree which renders that person incapable of safely driving.

d. That person is under the combined influence of alcohol and any other drugs or substances to a degree which renders that person incapable of safely driving.

[¶ 19] Driving while under the influence of drugs, the offense at issue in this case, comes under N.D.C.C. § 39–08–01(1)(c). The similar offenses of driving while under the influence of alcohol and driving while under the influence of a combination of drugs and alcohol are contained in subsections (1)(a), (1)(b), and (1)(d). In determining what is necessary to establish probable cause to arrest a driver for driving while under the influence of drugs, we are guided by what we have stated is necessary to arrest a driver for driving while under the influence of alcohol.

The expression 'under the influence of intoxicating liquor' simply means having drunk enough to disturb the action of the physical or mental faculties so that they are no longer in their natural or normal condition; that therefore, when a person is so affected by intoxicating liquor as not to possess that clearness of intellect and control of himself that he would otherwise have, he is 'under the influence of intoxicating liquor' and this is the common and well-known understanding of the expression.

*State v. Salhus,* 220 N.W.2d 852, 856 (N.D. 1974) (quoting *State v. Hanson,* 73 N.W.2d 135, 139–140 (N.D.1955)). From this definition, the Court in *Salhus,* developed a two-part test to sustain a conviction for driving while under the influence of intoxicating liquor:

1. That [a person] was driving a motor vehicle on a public way; and

2. That while so driving a motor vehicle [the person] was under the influence of intoxicating liquor so as 'not to possess that clearness of intellect and control of himself that he would otherwise have.'

220 N.W.2d at 856. Over twenty years later, our Court in *Moran v. North Dakota Dep't of Transp.,* 543 N.W.2d 767, 770 (N.D.1996), citing *Salhus* as authority, held that two elements were necessary to arrest a driver for driving while under the influence of alcohol: "[T]he law enforcement officer first must observe some signs of impairment, physical or mental. Further, the law enforcement officer must have reason to believe the driver's impairment is caused by alcohol." *Moran,* at 770 (citations omitted). This test, requiring impairment and indication of alcohol consumption, is the test we currently apply. *See, e.g., Seela v. Moore,* 1999 ND 243, ¶ 6, 603 N.W.2d 480; *Presteng v. Director, North Dakota Dep't of Transp.,* 1998 ND 114, ¶ 7, 579 N.W.2d 212.

[¶ 20] When looking at N.D.C.C. § 39–08–01, the specific language

of subsection (1)(c) suggests application of a similar two-part test to arrest for driving while under the influence of drugs. First, the statute requires the driver be incapable of safely driving; second, it requires the person be under the influence of drugs. We, therefore, conclude that for the officer in this case to have probable cause to arrest Sonsthagen for driving under the influence of drugs, the officer must: 1) observe some signs of physical or mental impairment; and 2) have reason to believe Sonsthagen's impairment is caused by drugs.

### A

[¶ 21] The hearing officer's findings of fact support that the officer observed Sonsthagen was impaired. First, the hearing officer found that the officer saw Sonsthagen driving "at what he determined to be in excess of the speed limit, and Mr. Sonsthagen failed to yield as [he] entered the freeway causing [the officer] to slow down in order to avoid a collision." Just as evidence of a traffic violation is a relevant factor in determining whether probable cause exists for driving under the influence of alcohol, *see Baer,* 1997 ND 222, ¶ 12, 571 N.W.2d 829; *Moran,* 543 N.W.2d at 770, traffic violations also indicate impairment when considered in the context of driving while under the influence of drugs.

[¶ 22] Additionally, the hearing officer found that the officer was "trained in administering sobriety tests, and he administered a sway, one leg stand and walk and turn tests." According to the hearing officer's findings, "[a]lthough the sobriety tests are primarily for testing regarding alcohol, [the officer] testified that the tests would also reflect some impairment regarding drugs." Finally, the hearing officer found that the officer concluded Sonsthagen "was impaired and under the influence of marijuana based upon all of his observations of Mr. Sonsthagen."

### B

[¶ 23] The hearing officer's findings of fact also support that the officer had reason to believe Sonsthagen's impairment was caused by drugs. First, the hearing officer found the officer "has had experience with individuals being under the influence of drugs as well as individuals being under the influence of intoxicating liquor." The hearing officer also found the officer "smelled a strong odor of marijuana coming from inside Mr. Sonsthagen's vehicle, and [the officer], through training and experience, is familiar with the smell of marijuana." We have recognized the smell of marijuana can be an important factor in establishing probable cause. *See State v. Overby,* 1999 ND 47, ¶ 11, 590 N.W.2d 703; *State v. Binns,* 194 N.W.2d 756, 758 (N.D. 1972).

[¶ 24] Finally, the hearing officer found the officer "observed Mr. Sonsthagen's squinty red eyes." The officer testified at the administrative hearing that marijuana smoke could have irritated Sonsthagen's eyes. Just as the observation of glassy, red, watery, or bloodshot eyes is a relevant factor in a probable cause determination to arrest for driving under the influence of alcohol, *see Baer,* 1997 ND 222, ¶ 12, 571 N.W.2d 829; *Moran,* 543 N.W.2d at 770, it is also a relevant factor in determining whether to arrest for driving under the influence of drugs.

[¶ 25] The hearing officer found the officer observed signs of Sonsthagen's physical and mental impairment and the officer had reason to believe the impairment was caused by drugs. The hearing officer's findings of fact support the conclusion that the officer had reasonable grounds to believe Sonsthagen was driving under the

influence of drugs. We, therefore, affirm the district court's September 27, 2002, Memorandum Opinion and Order and Judgment which affirmed the hearing officer's decision to revoke Sonsthagen's driving privileges for two years.

[¶ 26] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., and JAMES M. BEKKEN, D.J., concur.

[¶ 27] The Honorable JAMES M. BEKKEN, D.J., sitting in place of KAPSNER, J., disqualified.