2004 ND 54

**Jason Aelred DETTLER, Petitioner and Appellee,**

v.

**David A. SPRYNCZYNATYK, Director, Department of Transportation, Respondent and Appellant.**

No. 20030292.

Supreme Court of North Dakota.

March 23, 2004.

Mark A. Friese (argued) and Bruce D. Quick (on brief), Vogel Law Firm, Fargo, N.D., for petitioner and appellee.

Andrew Moraghan, Assistant Attorney General, Office of the Attorney General, Bismarck, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] North Dakota Department of Transportation Director David Sprynczynatyk appeals from the East Central Judicial District Court's judgment reversing the Department's decision to suspend Jason Dettler's driving privileges for ninety-one days. On appeal, the Department argues Dettler's claims that he was unlawfully seized and that the hearing officer disregarded the rules of evidence should not be considered, because they were not included in the specifications of error. The Department also argues the hearing officer's factual determination that Dettler had driven a vehicle within the two hours prior to his taking an Intoxilyzer test was not against the greater weight of the evidence. We conclude Dettler failed to properly specify any seizure error or any error involving a disregard for the rules of evidence by the hearing officer. We also conclude the hearing officer's factual determination that Dettler had driven a vehicle within the two hours prior to his taking an Intoxilyzer test is supported by the

evidence, and we therefore reverse the district court judgment and reinstate the hearing officer's suspension of Dettler's driving privileges for ninety-one days.

I

[¶ 2] On February 20, 2003, at approximately 1:15 a.m., Fargo Police Officer Jonathan Bair observed a pickup in the ditch on the north side of Main Avenue near 40th Street in Fargo. The ditch was snow-covered. The officer determined Dettler was the registered owner of the vehicle, and he located him at a nearby Hardee's. Dettler acknowledged the vehicle was his, but stated he had not been driving it. The officer had called a tow truck, and the two went outside when it arrived. Once outside, the officer observed the smell of alcohol coming from Dettler, so he asked Dettler to recite the alphabet. Dettler failed to correctly state the alphabet. The officer detained Dettler for further investigation into how the car had gotten into the ditch and who was driving it. After asking Dettler some questions and looking around the vehicle, the officer treated Dettler as having been the driver of the vehicle. He then conducted an investigation for driving under the influence ("DUI"). The officer conducted the horizontal-gaze-nystagmus test, the one-legged-stand test, the walk-and-turn test, and an SD-2 test. The officer arrested Dettler for DUI. At 2:17 a.m., Dettler submitted to an Intoxilyzer test, and the results showed he had a blood alcohol level of .14 percent. Dettler was notified of the Department's intent to suspend his driving privileges, and Dettler requested a hearing.

[¶ 3] At the March 21, 2003, administrative hearing, the officer testified he went to Hardee's because he assumed that was where the driver would be. The officer testified that when he got to Hardee's, he "[a]sked an individual that was seated there if he was the owner of the pickup truck that was in the ditch; and [Dettler] stated that, yes he was. Provided a driver's license, identified himself as Jason Dettler." The officer testified that when he approached Dettler, Dettler did not yet have his food. The officer testified they were on the side of Hardee's where they could see the vehicle through the window.

[¶ 4] The officer testified he asked Dettler whether he had been driving the vehicle and asked how it had ended up in the ditch. The officer testified Dettler said that he did not know how the truck had gotten into the ditch and that he had not been driving the vehicle. He explained that "somebody that he had met at a bar in West Fargo who he did not know the name of or where he was had been driving it." He also stated he did not know which bar he had come from.

[¶ 5] The officer testified he asked Dettler whether he had been drinking and Dettler answered ·yes. The officer also testified he "asked him if he'd come out with me to take care of the vehicle as the wrecker operator was out there." The officer testified that once outside, he could smell alcohol, and he noticed Dettler's watery eyes and unfocused stare. He testified he asked Dettler whether he knew the alphabet; Dettler said yes, and the officer asked him to recite it. He testified Dettler could not recite the alphabet. He testified he placed Dettler in his squad car at that time and told him he was detaining him for an investigation into how the vehicle had gotten into the ditch and who was driving it while under the influence. The officer testified he read Dettler his rights at that time.

[¶ 6] The officer also testified that while he was driving over to Dettler's vehicle, Dettler stated he had been on the passenger side of the vehicle when it went

into the ditch and he had gotten out on that side. The officer testified that after they arrived at the vehicle, he could see there were no footprints coming from the passenger's side, and the only tracks were on the driver's side. He testified that the tracks on the driver's side were pointy-toed and deep-heeled and appeared to be about the same size and shape as Dettler's cowboy boots. He testified he told Dettler that "based on the evidence I had that I was going to treat him as the driver." He testified he conducted a DUI investigation and arrested Dettler for driving under the influence.

[¶ 7] At the hearing, Dettler moved to dismiss for his unlawful seizure. Dettler argued there were not reasonable grounds to believe he had been in actual physical control of a motor vehicle. He argued he was not tested for intoxication in accordance with chapter 39–20 of the North Dakota Century Code, because it could not be established that he had been driving within the two hours prior to his being given an Intoxilyzer test to measure his blood alcohol level. Dettler also argued he believed it was an abuse of discretion to disregard the testimony about institutional pressures that officers face. The hearing officer denied Dettler's motions and suspended Dettler's driving privileges for ninety-one days.

[¶ 8] Dettler appealed the hearing officer's decision to the district court. On August 19, 2003, the district court entered a judgment reversing the hearing officer's decision. The district court held the evidence did not support the conclusion that Dettler had been driving the vehicle within the two hours prior to the administration of the Intoxilyzer test. The district court also concluded Dettler was seized without reasonable and articulable suspicion. The Department appealed the district court's decision.

[¶ 9] Dettler timely requested a hearing under N.D.C.C. § 39–20–05. The hearing officer had jurisdiction under N.D.C.C. § 39–20–05. The notice of appeal from the administrative agency decision to the district court was properly filed within seven days under N.D.C.C. § 39–20–06. The district court had jurisdiction under N.D.C.C. § 39–20–06. The Department filed a timely notice of appeal from the district court judgment under N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–32–49.

II

[¶ 10] The Administrative Agencies Practice Act, N.D.C.C. ch 28–32, governs our review of an administrative suspension of a driver's license. *Hanson v. Director, N.D. Department of Transportation*, 2003 ND 175, ¶ 7, 671 N.W.2d 780. "This Court exercises a limited review in appeals involving drivers' license suspensions or revocations." *Henderson v. Director, N.D. Department of Transportation*, 2002 ND 44, ¶ 6, 640 N.W.2d 714. On appeal, we review the administrative agency's decision and give deference to the administrative agency's findings. *Hanson*, at ¶ 7. We will not make independent findings or substitute our judgment for that of the agency. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161. We instead determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record. *Id.; Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). We also defer to the hearing officer's opportunity to judge the credibility of witnesses. *Hanson*, at ¶ 7. If the district court's analysis is sound, however, it is entitled to respect. *Id.* The conclusion as to whether the facts meet the legal standard, rising to the level

of probable cause or reasonable and articulable suspicion, is a question of law fully reviewable on appeal. *Sonsthagen,* at ¶ 7; *Hanson,* at ¶ 7.

[¶ 11]   We affirm the agency's decision unless:

1.  The order is not in accordance with the law.

2.  The order is in violation of the constitutional rights of the appellant.

3.  The provisions of this chapter have not been complied with in the proceedings before the agency.

4.  The rules or procedure of the agency have not afforded the appellant a fair hearing.

5.  The findings of fact made by the agency are not supported by a preponderance of the evidence.

6.  The conclusions of law and order of the agency are not supported by its findings of fact.

7.  The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8.  The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

## III

■   [¶ 12]   The Department argues, because Dettler's specifications of error were not particular enough to identify a seizure argument, the district court should not have considered Dettler's argument that an unlawful seizure had occurred. The Department also argues the specifications of error were not particular enough to identify Dettler's argument that the hearing officer disregarded the rules of evidence.   Although these issues were raised and argued by the Department in the appeal to the district court, the court did not address them.

[¶ 13]   A party who appeals from an administrative hearing officer's decision must comply with N.D.C.C. § 28–32–42(4). *Isaak v. Sprynczynatyk,* 2002 ND 64, ¶ 7, 642 N.W.2d 860.   Section 28–32–42(4), N.D.C.C., provides:

> An appeal shall be taken by serving a notice of appeal *and specifications of error specifying the grounds on which the appeal is taken,* upon the administrative agency concerned, upon the attorney general or an assistant attorney general, and upon all the parties to the proceeding before the administrative agency, and by filing the notice of appeal and specifications of error together with proof of service of the notice of appeal, and the undertaking required by this section, with the clerk of the district court to which the appeal is taken.   In an appeal of an agency's rulemaking action, only the administrative agency concerned, the attorney general, or an assistant attorney general, as well as the legislative council, need to be notified.

(Emphasis added).   An appeal from the decision of the agency must be made within thirty days after notice of the order has been given.   N.D.C.C. § 28–32–42(1).

[¶ 14]   When seeking reversal from a suspension hearing, however, N.D.C.C. § 39–20–06 provides, in part:

> Any person whose operator's license or privilege has been suspended, revoked, or denied by the decision of the hearing officer under section 39–20–05 may appeal within seven days after the date of the hearing under section 39–20–05 as shown by the date of the hearing officer's decision, section 28–32–42 notwithstanding, by serving on the director and filing a notice of appeal and *specifica-*

*tions of error* in the district court in the county where the events occurred for which the demand for a test was made, or in the county in which the administrative hearing was held.... Within twenty days after receipt of the notice of appeal, the director or the hearing officer who rendered the decision shall file in the office of the clerk of court to which the appeal is taken a certified transcript of the testimony and all other proceedings.

(Emphasis added).

■ [¶ 15] Both statutes require the filing of specifications of error. To comply with the requirements of N.D.C.C. § 28-32–42(4), the specifications of error must "identify what matters are truly at issue with sufficient specificity to fairly apprise the agency, other parties, and the court of the particular errors claimed." *Vetter v. N.D. Workers Comp. Bureau*, 554 N.W.2d 451, 454 (N.D.1996). This Court stated that after its decision in *Vetter*, it would no longer tolerate imprecise or boilerplate specifications of error. *See generally id.* Boilerplate specifications of error are those that are general enough to apply to any administrative agency appeal. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 14, 663 N.W.2d 161. This rationale has also been applied in driver's license suspension cases. *Id.* Furthermore, the same purpose for filing the specifications of error applies under both statutes—to prevent meaningless specifications of error. We recognize that compliance with the specifications-of-error requirement, because of the different time limitations for filing, may be more difficult under N.D.C.C. § 39–20–06, but this is for the legislature to address.

[¶ 16] Dettler claims his seizure argument fits under his fourth specification of error, which states, "The Hearing Officer's Decision is not in accordance with the law and is in violation of the Appellant's consti-

tutional and statutory rights." This specification of error is the only one that could encompass Dettler's argument that the hearing officer disregarded the rules of evidence. Similar specifications of error have been found to be boilerplate. *See generally Vetter v. N.D. Workers Comp. Bureau*, 554 N.W.2d 451, 453 (N.D.1996). Dettler's general specifications conceivably could encompass all kinds of different arguments. As such, it is the kind of pure boilerplate that is insufficient as a matter of law.

[¶ 17] Dettler also argues the Department must be prejudiced by the alleged lack of specificity. He cites *Vetter v. N.D. Workers Comp. Bureau*, 554 N.W.2d 451, 453 (N.D.1996). Although *Vetter* states that prejudice or lack of prejudice may be a factor to consider in addressing a failure to comply with the specificity requirement, this statement must be read in context. 554 N.W.2d at 453. Prejudice was one of several factors weighed by this Court in deciding whether to overturn the cases that were tolerant of boilerplate specifications of error. *Id.* In *Vetter*, this Court discussed many factors to be weighed and then decided "[t]he time has come to compel compliance with the specificity requirement." *Id.* at 454. *Vetter* does not require prejudice in order to find a failure to comply with the specificity requirement. We conclude Dettler's specifications of error were not sufficiently specific to identify the seizure argument or the argument that the hearing officer disregarded the rules of evidence.

■ [¶ 18] Dettler further claims that even if this Court concludes the specifications of error were insufficient, reversing the district court's decision is not the appropriate remedy. Dettler argues this Court has granted the district court the discretion to summarily affirm an agency decision if the district court is not satisfied

that the issues have been specified. He argues that the abuse-of-discretion standard applies and that the district court did not abuse its discretion in determining the specification requirement was met. The district court acts as an appellate court in an appeal from an administrative agency. *Lewis v. N.D. Workers Comp. Bureau,* 2000 ND 77, ¶ 8, 609 N.W.2d 445. We do not review the district court's decision, but rather the administrative hearing officer's decision. *Hanson v. Director, N.D. Department of Transportation,* 2003 ND 175, ¶ 7, 671 N.W.2d 780.

[¶ 19] Dettler also argues that the decisions in *Sonsthagen v. Sprynczynatyk,* 2003 ND 90, 663 N.W.2d 161, and *Isaak v. Sprynczynatyk,* 2002 ND 64, 642 N.W.2d 860, are distinguishable from this case and that the district court's decision should not be overturned. Dettler argues that in *Sonsthagen,* we declined to address an issue raised on appeal because it was not raised below; however, we concluded "Sonsthagen's specifications of error were not sufficiently specific to identify the . . . argument he now raises on appeal. Because Sonsthagen failed to satisfy the requirements of N.D.C.C. § 28–32–42(4), we will not consider this argument." *Sonsthagen,* at ¶ 14. It is clear that we declined to address the issue because the specification requirement was not satisfied.

[¶ 20] Dettler also argues that in *Isaak v. Sprynczynatyk,* 2002 ND 64, 642 N.W.2d 860, we did not reverse for Isaak's failure to specify. He argues that despite having concluded Isaak failed to properly specify his error, this Court, in Part II of the opinion, went on to conclude the district court erred in limiting the period of suspension. He argues, therefore, that we reversed because the district court erred. But this Court resolved the merits of Isaak's argument for no reason other than to furnish an additional basis for reinstating the agency's decision. *See Isaak,* at ¶¶ 7–8; *also see id.* at ¶ 15 (Sandstrom, J., concurring specially).

[¶ 21] Because Dettler did not satisfy the specificity requirements of N.D.C.C. § 39–20–06, it is not necessary to review the merits of these arguments on appeal.

## IV

[¶ 22] The Department also argues, the hearing officer's finding of fact that Dettler had driven a vehicle within the two hours prior to the administration of the Intoxilyzer test is not against the greater weight of the evidence, and reasonable minds could conclude the pickup had been driven by Dettler within the two hours prior to his having taken the test.

[¶ 23] The officer testified that Dettler admitted he was in the vehicle when it went into the ditch. The officer testified, Dettler told him that he was not the driver and that he could not tell him who had been driving the vehicle. The officer also testified Dettler told him he had gotten out of the passenger-side door of the vehicle; however, the officer testified there were no footprints coming from the passenger side. The only tracks coming from the vehicle were on the driver's side. The officer testified that the tracks on the driver's side were pointy-toed and deep-heeled and appeared to be about the same size and shape as Dettler's cowboy boots. The officer also testified Dettler gave him a set of keys that were in his pocket. The officer testified there was a combination of stuff and garbage—everything from compact discs to tools—lying on the passenger seat and floor. A fact-finder can draw reasonable inferences from the evidence. *Nelson v. Director, N.D. Department of Transportation,* 1997 ND 81, ¶ 11, 562 N.W.2d 562. It is not unreasonable to infer from the testimony that Dettler was the driver of the vehicle.

[¶ 24] As to whether he had been driving the vehicle within two hours of taking the Intoxilyzer test, the evidence demonstrates the test was administered at 2:17 a.m. The officer testified he determined the time of driving from Dettler's statement that he left the bar at closing time, which the officer stated was 1:00 in the morning. The time of driving on his report indicates 1:15 a.m. The officer testified that was the time he saw the vehicle. Dettler presented no contrary testimony. This evidence supports a finding that the Intoxilyzer test was conducted within two hours from the time Dettler had been driving the vehicle. We conclude the evidence supports the hearing officer's finding that Dettler had driven the vehicle within the two hours prior to the administration of the test.

V

[¶ 25] Because the testimony at trial supports a finding that Dettler had been driving the vehicle within the two hours prior to the administration of the test, we reverse the district court judgment and reinstate the hearing officer's suspension of Dettler's driving privileges for ninety-one days.

[¶ 26] WILLIAM F. HODNY, S.J., WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.

[¶ 27] WILLIAM F. HODNY, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 28] Jason Dettler argues on appeal that he should not be held to the requirements of specificity of the issues in N.D.C.C. § 28–32–42(4), as we interpreted that statute in *Vetter v. N.D. Workers* *Comp. Bureau*, 554 N.W.2d 451 (N.D. 1996), because the ordinary time for appeal is thirty days under N.D.C.C. § 28–32–42(1), whereas under N.D.C.C. § 39–20–06, the statute governing Dettler's appeal, he must file the appeal within seven days. Although one might expect a person taking an appeal to have some idea of the errors justifying the appeal, I understand the realities are that appeals are taken to protect the right to appeal and the reasons for the appeal in some instances will be determined later. For that reason, Dettler's argument has a certain allure. But that is a matter for the Legislature which enacted the statutes to rectify, unless the shortened period of time in which to appeal raises some constitutional argument not readily discernable nor, more importantly, argued here.

[¶ 29] Nevertheless, in the application of the specificity requirements, I might apply a less stringent standard to appeals under N.D.C.C. § 39–20–06 because of the short period of time the statute allows for the appeal. But here, the specifications read:

1. The Hearing Officer made findings of fact not supported by the testimony;

2. The Hearing Officer erred in concluding the Intoxilyzer test was fairly administered;

3. The Hearing Officer erred in concluding the Intoxilyzer test results were properly obtained;

4. The Hearing Officer's Decision is not in accordance with the law and is in violation of the Appellant's constitutional and statutory rights.

5. The Hearing Officer erred in concluding the chemical test results demonstrated an alcohol concentration of at least ten one-hundredths of one percent by weight within two hours of driving.

6. The Hearing Officer impermissibly shifted the burden of persuasion and proof to the Appellant.

[¶ 30] I am unable to determine in reading these specifications of error, any reasons why the specified errors were errors. Without some explanation the specifications of error do not even substantially comply with the statutory requirement for specifications of error as exemplified in *Vetter.*

[¶ 31] I concur in the result reached by the majority opinion.

[¶ 32] MARY MUEHLEN MARING, J., concurs.