2017 ND 253

**Alexis Kae GLASER, Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellant**

No. 20170129

Supreme Court of North Dakota.

Filed 10/17/2017

James W. Martens (argued) and Chad R. McCabe (on brief), Bismarck, N.D., for appellee.

Michael T. Pitcher, Assistant Attorney General, Bismarck, N.D., for appellant.

McEvers, Justice.

[¶ 1] The North Dakota Department of Transportation appeals from a district court judgment reversing a Department hearing officer's decision to suspend Alexis Glaser's driving privileges for two years. We conclude Glaser failed to rebut the prima facie evidence of the time of the accident on the report and notice, showing her chemical Intoxilyzer test was administered within two hours of driving. We further conclude a reasoning mind could reasonably conclude Glaser drove or was in physical control of a motor vehicle within two hours of performance of a chemical test was supported by a preponderance of the evidence on the entire record. We reverse the judgment and reinstate the suspension of Glaser's driving privileges for two years.

I

[¶ 2] In June 2016, Bismarck Police Officer Del Gallagher responded to assist in a motor vehicle crash in the city of Bismarck at the request of Officer Rob Rasmussen. When Gallagher arrived, he observed two individuals standing outside the vehicle that appeared to have struck a parked car. Rasmussen told Gallagher that Glaser appeared to be intoxicated and that she was the driver of the vehicle. Rasmussen indicated Glaser failed the horizontal gaze nystagmus test and performed poorly on the walk-and-turn and one-leg stand tests. Gallagher continued the investigation for driving under the influence. Gallagher observed that Glaser's eyes were glossy; she had a dazed appearance, and a very strong odor of alcohol was coming from her. Glaser admitted to drinking six beers in two hours. Glaser agreed to taking an onsite screening test, showing her blood alcohol content was above the legal limit.

[¶ 3] Gallagher arrested Glaser for DUI and transported her to the Bismarck Police Department. At the police department, Glaser agreed to take a chemical Intoxilyzer breath test and was read her Miranda rights. Glaser's blood alcohol content registered at .199 percent by weight. Gallagher issued a report and notice to Glaser, notifying Glaser of the Department's intent to revoke her driving privileges. Glaser requested an administrative hearing.

[¶ 4] At the hearing, Gallagher testified that Rasmussen was at the site of a motor vehicle crash and requested a second unit to help him. Gallagher further testified he did not know exactly when the accident occurred and indicated the time of driving noted at 2:37 a.m. on the report and notice he issued was the time of the call reporting the accident. The report and notice indicating the breath specimen was obtained at 3:55 a.m. was admitted into evidence. The hearing officer also offered and admitted a motor vehicle crash report submitted by Rasmussen over Glaser's objections. The crash report recorded the time of crash as 2:37 a.m. The hearing officer provided the following analysis:

Ms. Glaser's argument was that the time of driving could not be established so it cannot be established that the test was administered within two hours of driving.

Officer Rasmussen, the officer, Officer Gallagher had contact and conversation with prior to approaching Ms. Glaser prepared and submitted to the Department as a regularly kept record a crash report of the accident to which he was the responding officer, and was investigating. The greater weight of the evidence, including inferences taken from the fact that Ms. Glaser did not protest or state that she was not the driver, the fact that she was present at the hearing and did not take the stand, and that the information in the crash report shown on Exhibit 1F matches the information

on the report and notice form, indicates that Ms. Glaser was the driver of her vehicle that evening, that a crash occurred <u>at or near 2:37 am</u>. The test was administered at 3:55 leaving approximately 42 minutes before the two hours in which the test could be administered expired. Given the communication between officers prior to testing, Officer Gallagher's reliance on the information gathered by a fellow officer and communicated to him is enough for him to rely on when making a determination that Ms. Glaser was the driver of the vehicle and to ensure the test was administered within two hours of the time of driving. (Emphasis added.) The hearing officer suspended Glaser's driving privileges for a period of two years.

[¶ 5] Glaser appealed the hearing officer's decision to the district court. On appeal, Glaser argued the Department failed to present any admissible evidence showing the chemical Intoxilyzer test was administered within two hours of driving. Glaser also argued the motor vehicle crash report, which contained the time of driving, was inadmissible for lack of foundation and hearsay.

[¶ 6] The district court held the motor vehicle crash report was admissible as it fell within the public records exception to the hearsay rule. The court also held Glaser failed to show the source of the information indicated a lack of trustworthiness. However, the court agreed with Glaser that the Department failed to establish the time of driving was within two hours of Glaser's chemical test. Relying on *Dawson v. N.D. Dep't of Transp.*, 2013 ND 62, 830 N.W.2d 221, the court held there was no evidence in the record to support the report and notice time of driving as 2:37 a.m. As in *Dawson*, the court similarly found the time of the accident on the motor vehicle crash report was unsupported by

the record, and although admissible, the time of driving was called into question at the administrative hearing. The court ruled, because Gallagher did not know the time of driving and Rasmussen did not testify, the Department failed to establish the test was administered within two hours.

II

[¶ 7] "An appeal from a Department of Transportation hearing officer's decision suspending driving privileges is governed by the Administrative Agencies Practices Act." *Pavek v. Moore*, 1997 ND 77, ¶ 4, 562 N.W.2d 574; *see also* N.D.C.C. ch. 28–32. On appeal, we review the record of the administrative hearing officer rather than the district court. *Pavek*, at ¶ 4.

[¶ 8] Under N.D.C.C. § 28–32–46, an administrative agency's decision must be affirmed unless:

1. The order is not in accordance with the law.

2. The order is not in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not

adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 9] In *Deeth v. Dir., N.D. Dep't of Transp.*, 2014 ND 232, ¶ 10, 857 N.W.2d 86 (citations omitted), we explained:

It is well established that we must afford "great deference" to the factual determinations made by an agency when reviewing the agency's findings of fact. Rather than making independent findings of fact, or substituting our judgment for that of the agency, our review is confined to determining whether " 'a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.' " Although this Court's review is limited to the record before the administrative agency, "the district court's analysis is entitled to respect if its reasoning is sound."

## III

[¶ 10] The Department argues Glaser failed to rebut the prima facie evidence of the time of the accident on the report and notice. Section 39–08–01(1)(a), N.D.C.C., provides:

A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if ... [t]hat person has an alcohol concentration of at least eight one-hundredths of one percent by weight at the time of the performance of a chemical test <u>within two hours after the driving or being in actual physical control of a vehicle.</u>

(Emphasis added.) "To establish a per se violation of N.D.C.C. § 39–08–01(1)(a), a chemical test must be performed within two hours of driving." *Pavek*, 1997 ND 77, ¶ 7, 562 N.W.2d 574.

[¶ 11] The Department's report and notice form is admissible as prima facie evidence of its contents once it is forwarded to the director of the Department. *Dawson*, 2013 ND 62, ¶ 23, 830 N.W.2d 221. The report and notice form, coupled with an officer's testimony, may be sufficient to establish time of driving in order to establish whether the chemical test was conducted within two hours of that time. *Pavek*, 1997 ND 77, ¶ 8, 562 N.W.2d 574. However, the time of driving may be placed into question at the administrative hearing. *Id.* at ¶ 9. Here, Glaser cross examined Gallagher placing the time of driving in question.

[¶ 12] In reaching our decision, we must discuss three relevant cases: *Pavek*, 1997 ND 77, 562 N.W.2d 574; *Dawson*, 2013 ND 62, 830 N.W.2d 221; and *Dettler v. Sprynczynatyk*, 2004 ND 54, 676 N.W.2d 799. In *Pavek*, the arresting officer, in filling out the report and notice form, noted the time of Pavek's driving was 5:45 p.m. *Id.* at ¶ 8. The Department argued this was prima facie evidence of the time Pavek drove and further contended this evidence was not refuted by the defense. *Id.* At the administrative hearing, the exact time of driving was placed in question. *Id.* at ¶ 9. The Department's hearing officer found a civil inspector at a scale asked the arresting officer to investigate a person's sobriety at "approximately 5:45 p.m.," but the arresting officer on the notice and report form stated Pavek was "driving" at 5:45 p.m. *Id.* There was no other evidence presented to establish the time of driving. *Id.* On that record the hearing officer suspended Pavek's driving privileges for one year. *Id.* at ¶ 3. The district court reversed the hearing officer's decision, stating the "report and the decision of the hearing officer are based upon an assumption rather than evidence," because the officer never saw Pavek actually driving. *Id.*

[¶ 13] This Court affirmed on appeal, explaining that while the factfinder might have inferred Pavek was the driver under the facts in evidence, that inference could not extend to the time of driving because no evidence existed as to the length of time Pavek was at the scale before the civilian contractor made the request to the arresting officer. *Pavek*, 1997 ND 77, ¶ 10, 562 N.W.2d 574. The hearing officer in *Pavek* did not make any specific findings as to the time of driving and, therefore, could not have relied on common sense and experience. *Id.* On the record, the time of driving was not determined and the Department was unable to establish if the Intoxilyzer test was conducted within two hours of driving as required. *Id.*

[¶ 14] In *Dawson*, 2013 ND 62, ¶ 3, 830 N.W.2d 221, the police officer received a dispatch report at approximately 3:15 p.m., indicating a boat had fallen off a trailer pulled by a vehicle and the driver did not stop. Several minutes later, the officer received another call from dispatch indicating the driver had returned to the accident site. *Id.* at ¶ 4. Dawson admitted driving the vehicle, losing control, and going into the ditch. *Id.* He also admitted consuming alcohol. *Id.* The hearing officer found that the accident occurred just before the initial report by dispatch and that Dawson had been driving when he returned to the accident site. *Id.* at ¶ 5. Therefore, the hearing officer concluded Dawson had been driving or in physical control of a motor vehicle within two hours of the performance of a chemical test. *Id.* Dawson appealed to the district court. *Id.* at ¶ 6. The court affirmed, holding the greater weight of the evidence established a reasoning mind could reasonably conclude Dawson was driving at approximately 3:15 p.m. *Id.* at ¶ 7. On appeal, however, this Court concluded the time of driving was not supported by the record, and the Department was unable to establish Dawson's chemical test was administered within two hours of Dawson's driving. *Id.* at ¶ 26. This Court reversed and remanded to the Department to reinstate Dawson's driving privileges. *Id.* at ¶ 1.

[¶ 15] In *Dettler*, 2004 ND 54, ¶ 2, 676 N.W.2d 799, a police officer observed a pickup in the ditch. The officer located the driver, Dettler, at a nearby restaurant. *Id.* Dettler denied driving the vehicle but stated the vehicle was his. *Id.* The officer conducted an investigation for driving under the influence and subsequently arrested Dettler for DUI. *Id.* At the administrative hearing, the officer testified Dettler said that he did not know how the truck had ended up in the ditch and that he had not been driving. *Id.* at ¶ 4. Dettler admitted to drinking alcohol. *Id.* at ¶ 5. The officer testified that after they arrived at Dettler's vehicle, there were only footprints on the driver's side, even though Dettler had told him he had gotten out of the passenger side. *Id.* at ¶ 6. The officer also testified the footprints in the snow appeared to be the same size and shape as Dettler's cowboy boots. *Id.* The officer stated Dettler gave him a set of keys that were in his pocket. *Id.* at ¶ 23. The officer determined the time of driving from Dettler's statement that he had left the bar at closing time, which the officer stated was 1:00 a.m. *Id.* at ¶ 24. The time of driving on his report indicated 1:15 a.m., which was the time the officer saw the vehicle. *Id.* The administrative officer suspended Dettler's driving privileges for ninety-one days. *Id.* at ¶ 7.

[¶ 16] Dettler appealed the hearing officer's decision to the district court. *Dettler*, 2004 ND 54, ¶ 8, 676 N.W.2d 799. The district court reversed the hearing officer's decision, holding the evidence did not support the conclusion that Dettler had been driving the vehicle within the two hours prior to the administration of the chemical

test. *Id.* The Department appealed. *Id.* This Court concluded the evidence supported the hearing officer's finding that Dettler had driven the vehicle within the two hours before the administration of the test. *Id.* at ¶ 24. This Court reversed the judgment and reinstated the hearing officer's suspension of Dettler's driving privileges for ninety-one days. *Id.* at ¶ 25.

[¶ 17] *Pavek* and *Dawson* are distinguishable from the present case. In *Pavek* and *Dawson*, the time of driving indicated on the report and notice had no support in the record. Rather, we conclude this case is similar to *Dettler*. In *Dettler*, circumstantial evidence established the time frame that Dettler was driving within two hours of the chemical test.

[¶ 18] Here, the record shows each form was filled out by a separate police officer. Gallagher testified he did not know the exact time of driving, only when the call came in. It is not disputed on appeal that Rasmussen's crash report was admissible evidence. The crash report lists Glaser as the driver, the time of the crash, an admission from Glaser related to the crash, and provides in relevant part:

> D1 stated she just left her sisters birthday party and was on her way home. D1 stated she looked down at her phone for a second when the passenger yelled "watch out". D1 stated she looked up and was unable to stop before striking U2 which was parked on the side of the road.

Reasonable inferences from the evidence can be drawn by the hearing officer. *Schock v. N.D. Dep't of Transp.*, 2012 ND 77, ¶ 19, 815 N.W.2d 255. A hearing officer may use common sense and experience to draw inferences from the evidence presented. *Id.* Gallagher's testimony as to the time he put on the report and notice form called the time of driving into question, but did not rebut the prima facie evidence in

his report and notice. Unless an officer sees an accident happen, an exact time of driving is not likely to be ascertainable. As in *Dettler*, the issue here is not the exact time of driving, but whether the greater weight of the evidence would allow a reasonable mind to conclude Glaser had been driving within two hours of the chemical test. *Dettler*, 2004 ND 54, ¶ 22, 676 N.W.2d 799. The crash report, coupled with reasonable inferences made by the Department hearing officer, establishes a time frame when Glaser was driving. Based on this record, the hearing officer specifically found Glaser was driving within two hours of the chemical test. Because we conclude a reasoning mind could reasonably conclude Glaser was driving within two hours of the chemical test, the hearing officer's determination to suspend Glaser's license was in accordance with the law.

IV

[¶ 19] We conclude Glaser failed to rebut the prima facie evidence of the time of the accident. We reverse the judgment and reinstate the hearing officer's suspension of Glaser's driving privileges for two years.

[¶ 20] Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Jon J. Jensen

Gerald W. VandeWalle, C.J.