2013 ND 157

Jonathan J. DANIELS, Appellee

v.

Francis ZIEGLER, Director, North Dakota Department of Transportation, Appellant.

No. 20130044.

Supreme Court of North Dakota.

Aug. 29, 2013.

Mark A. Friese, Fargo, N.D. 58107–1389, for appellee.

Michael T. Pitcher, Bismarck, N.D. 58501–4509, for appellant.

CROTHERS, Justice.

[¶ 1] The Department of Transportation appeals from a judgment reversing the Department's decision to suspend Jonathan Daniels' driving privileges for 365 days. Because the issue that formed the basis for the district court's decision was not sufficiently articulated in Daniels' specification of errors, we reverse the judgment and reinstate the administrative decision.

I

[¶ 2] In the early morning hours of March 7, 2012, a Dickey County deputy sheriff responded to a call about a vehicle stuck in a ditch with an attached trailer partially on the roadway. The deputy arrived at the scene, walked up to the vehicle which was running, and knocked on the driver side window, waking Daniels. The deputy, who knew Daniels, noted Daniels was confused when asked about his current location. Daniels told the deputy he "hit the ditch" and rather than wake anyone, he decided to sleep in the pickup and seek assistance in the morning. The deputy noticed a "faint" odor of alcohol on Daniels and an open can of beer in the vehicle, and after being asked whether he had been drinking, Daniels told the deputy "he hadn't been drinking that much." Daniels agreed to take field sobriety tests and failed some of them. Daniels submitted to an S–D5 test which registered 0.09, and the deputy placed Daniels under arrest for actual physical control of a vehicle while under the influence of intoxicating liquor. The deputy took Daniels to a hospital for a blood test, which yielded a result of "0.084 g/100ml." The deputy on

the report and notice form filled in the "Test Results" as "0.08%."

[¶ 3] At the administrative hearing, Daniels raised several issues including that the Department lacked authority to suspend his driving privileges because the deputy did not adequately complete the report and notice form and the submission for blood form 104. Specifically, Daniels claimed the deputy "failed to establish reasonable suspicion to lawfully detain [him], failed to provide a copy of the bottom portion of Form 104 to the Department, and ... failed to indicate on the Report and Notice the words 'b.a.c.' after the test results of .08% were filled in by" the deputy. The Department rejected these arguments and suspended Daniels' driving privileges for 365 days. The Department ruled the deputy was operating under the "community caretaking function" and had reasonable grounds to believe Daniels was in actual physical control in violation of the law. The Department ruled the deputy's failure to provide the bottom portion of form 104 was not "fatal" because only a duplicate of the certified copy of the analytical report is required to be forwarded to the Department. The Department rejected Daniels' contention that the reported test results did not indicate it was a blood alcohol concentration or if it was by weight, by volume or by density, concluding: "For the purposes of the Report and Notice Form, a reasonable person can conclude that the recorded amount of .08% relates to the blood alcohol concentration at the time the blood specimen was obtained despite inclusion [sic] of the initials 'b.a.c.' "

[¶ 4] Daniels appealed to the district court, listing 23 specifications of error. The court reversed the Department's decision, concluding the Department lacked the authority to suspend because this Court's decisions create a "bright-line rule" that requires the words "by weight" follow the numerals written on the test result line of the report and notice form and the "officer failed to comply with N.D.C.C. § 39–20–05(1)[sic] because the test results did not show a blood alcohol concentration of 'at least eight one-hundredths of one percent *by weight*' as required by the statute." The court did not address Daniels' other arguments.

## II

[¶ 5] The Department argues the district court erred in ruling it had no authority to suspend Daniels' driving privileges. We review the Department's decision to suspend a person's driving privileges under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, and must affirm unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46. "This Court reviews the agency's findings and decisions, and the district court's analysis is entitled to respect if it is sound." *Morrow v. Ziegler*, 2013 ND 28, ¶ 6, 826 N.W.2d 912.

### A

██ [¶ 6] Courts have limited authority to review administrative agency decisions:

"The right to appeal is governed solely by statute, *Interest of K.J.*, 2010 ND 46, ¶ 14, 779 N.W.2d 635, and an appellant must meet the statutory requirements for perfecting an administrative appeal for a district court to obtain subject matter jurisdiction over the appeal. *Geffre v. North Dakota Dep't of Health*, 2011 ND 45, ¶ 9, 795 N.W.2d 681. We are mindful that an appeal from an administrative agency to the district court invokes that court's appellate jurisdiction, *Lewis v. North Dakota Workers Comp. Bureau*, 2000 ND 77, ¶ 8, 609 N.W.2d 445, and that appeals from an administrative agency involve issues of separation of powers of the three branches of government. *See Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220–21 (N.D.1979); N.D. Const. art. XI, § 26." *Meier v. North Dakota Dep't of Human Servs.*, 2012 ND 134, ¶ 4, 818 N.W.2d 774.

██ [¶ 7] Under N.D.C.C. § 39–20–06, a person appealing to the district court from the Department's decision to suspend driving privileges must comply with the specifications-of-error requirement of N.D.C.C. § 28–32–42(4). *See Richter v. North Dakota Dep't of Transp.*, 2010 ND 150, ¶ 20, 786 N.W.2d 716; *Bienek v. Department of Transp.*, 2007 ND 117, ¶ 15, 736 N.W.2d 492; *Dettler v. Sprynczynatyk*, 2004 ND 54, ¶ 15, 676 N.W.2d 799; *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 14, 663 N.W.2d 161; *Isaak v. Sprynczynatyk*, 2002 ND 64, ¶ 7, 642 N.W.2d 860. We have explained:

"Both statutes require the filing of specifications of error. To comply with the requirements of N.D.C.C. § 28–32–42(4), the specifications of error must 'identify what matters are truly at issue with sufficient specificity to fairly apprise the agency, other parties, and the court of the particular errors claimed.' *Vetter v. N.D. Workers Comp. Bureau*, 554 N.W.2d 451, 454 (N.D.1996). This Court stated that after its decision in *Vetter*, it would no longer tolerate imprecise or boilerplate specifications of error. *See generally id.* Boilerplate specifications of error are those that are general enough to apply to any administrative agency appeal. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 14, 663 N.W.2d 161. This rationale has also been applied in driver's license suspension cases. *Id.* Furthermore, the same purpose for filing the specifications of error applies under both statutes—to prevent meaningless specifications of error. We recognize that compliance with the specifications-of-error requirement, because of the different time limitations for filing, may be more difficult under N.D.C.C. § 39–20–06, but this is for the legislature to address."

*Dettler*, at ¶ 15.

[¶ 8] Most of the specifications of error filed by Daniels simply parrot the provisions of N.D.C.C. § 28–32–46 and are therefore boilerplate because they are general enough to apply to any administrative appeal. The only specification of error possibly encompassing Daniels' claim that the report and notice form was fatally flawed because it did not include "b.a.c." in the "Test Results" line states: "The hearing officer erred in concluding the Department had jurisdiction, despite undisputed evidence of noncompliance with N.D.C.C. § 39–20–03.1 and N.D.C.C. § 39–07–10."

[¶ 9] Section 39–20–03.1, N.D.C.C., provides:

"If a person submits to a test under section 39–20–01, 39–20–02, or 39–20–03 and the test shows that person to have an alcohol concentration of at least eight one-hundredths of one percent by weight or, with respect to a person under twenty-one years of age, an alcohol concentration of at least two one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving or being in actual physical control of a vehicle, the following procedures apply:

1. The law enforcement officer shall immediately issue to that person a temporary operator's permit if the person then has valid operating privileges, extending driving privileges for the next twenty-five days, or until earlier terminated by the decision of a hearing officer under section 39–20–05. The law enforcement officer shall sign and note the date on the temporary operator's permit. The temporary operator's permit serves as the director's official notification to the person of the director's intent to revoke, suspend, or deny driving privileges in this state.

2. If a test administered under section 39–20–01 or 39–20–03 was by urine sample or by drawing blood as provided in section 39–20–02 and the individual tested is not a resident of an area in which the law enforcement officer has jurisdiction, the law enforcement officer shall, on receiving the analysis of the urine or blood from the director of the state crime laboratory or the director's designee and if the analysis shows that individual had an alcohol concentration of at least eight one-hundredths of one percent by weight or, with respect to an individual under twenty-one years of age, an alcohol concentration of at least two one-hundredths of one percent by weight, either proceed in accordance with subsection 1 during that individual's reappearance within the officer's jurisdiction, proceed in accordance with subsection 3, or notify a law enforcement agency having jurisdiction where the individual lives. On that notification, that law enforcement agency shall, within twenty-four hours, forward a copy of the temporary operator's permit to the law enforcement agency making the arrest or to the director. The law enforcement agency shall issue to that individual a temporary operator's permit as provided in this section, and shall sign and date the permit as provided in subsection 1.

3. If the test results indicate an alcohol concentration at or above the legal limit, the law enforcement agency making the arrest may mail a temporary operator's permit to the individual who submitted to the blood or urine test, whether or not the individual is a resident of the area in which the law enforcement officer has jurisdiction. The third day after the mailing of the temporary operator's permit is considered the date of issuance. Actual notice of the opportunity for a hearing under this section is deemed to have occurred seventy-two hours after the notice is mailed by regular mail to the address submitted by the individual to the law enforcement officer. The temporary operator's permit serves as the director's official notification to the

individual of the director's intent to revoke, suspend, or deny driving privileges in this state.

4. The law enforcement officer, within five days of the issuance of the temporary operator's permit, shall forward to the director a certified written report in the form required by the director. If the individual was issued a temporary operator's permit because of the results of a test, the report must show that the officer had reasonable grounds to believe the individual had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01, or equivalent ordinance, that the individual was lawfully arrested, that the individual was tested for alcohol concentration under this chapter, and that the results of the test show that the individual had an alcohol concentration of at least eight one-hundredths of one percent by weight or, with respect to an individual under twenty-one years of age, an alcohol concentration of at least two one-hundredths of one percent by weight. In addition to the operator's license and report, the law enforcement officer shall forward to the director a certified copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for a blood or urine test for all tests administered at the direction of the officer."

Section 39–07–10, N.D.C.C., provides that "[a]ny officer violating section 39–07–07, 39–07–08, 39–07–09, 39–20–03.1, or 39–20–03.2 is guilty of misconduct in office and is subject to removal from office."

[¶ 10] Section 39–20–03.1, N.D.C.C., imposes myriad duties upon law enforcement officers and agencies before the Department may suspend a person's driving privileges. Section 39–07–10, N.D.C.C., subjects the officers to removal from office for violating N.D.C.C. § 39–20–03.1 and four other statutes. The specification of error merely alleging noncompliance with the two statutes does not "identify what matters are truly at issue with sufficient specificity to fairly apprise the agency, other parties, and the court of the particular errors claimed." *Vetter v. North Dakota Workers Comp. Bureau,* 554 N.W.2d 451, 454 (N.D.1996). This specification of error is imprecise, boilerplate, and general enough to apply to any appeal in a driver's license suspension case.

[¶ 11] The Department need not show prejudice from the lack of specificity, and inadequate specifications of error furnish the basis for reinstating the Department's decision. *See Dettler,* 2004 ND 54, ¶¶ 17–21, 676 N.W.2d 799; *see also Midthun v. North Dakota Workforce Safety and Ins.,* 2009 ND 22, ¶ 7, 761 N.W.2d 572 ("Boilerplate specifications of error ... are ripe for dismissal.") We decline to address the issue and conclude the district court erred in reversing the Department's decision on a ground that was not sufficiently articulated in Daniels' specifications of error.

B

[¶ 12] In his specifications of error, Daniels claimed that "[t]he hearing officer erred in concluding the arresting officer was acting 'under a community caretaking function.'" As an alternative argument on appeal in support of affirming the district court's decision, Daniels argues the deputy lacked "articulable suspicion to justify the warrantless seizure." To support this argument, as well as four other arguments to sustain the court's re-

versal, Daniels simply states in his appellate brief that he "alleges and incorporates by reference all previous argument submitted to the district court."

[¶ 13] We have disapproved the practice of incorporating by reference in an appellate brief arguments previously presented to the district court. *See Minto Grain, LLC v. Tibert*, 2009 ND 213, ¶ 40, 776 N.W.2d 549. We conclude these issues are inadequately briefed for our consideration, and we decline to address them. *See, e.g., Smestad v. Harris*, 2011 ND 91, ¶ 5, 796 N.W.2d 662, and cases cited therein.

### III

[¶ 14] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. We deny Daniels' request for sanctions against the Department. We reverse the judgment and reinstate the administrative decision.

[¶ 15] MARY MUEHLEN MARING, DALE V. SANDSTROM, GAIL HAGERTY, D.J. and GERALD W. VANDE WALLE, C.J., concur.

[¶ 16] The Honorable GAIL HAGERTY, D.J., sitting in place of KAPSNER, J., disqualified.