2014 ND 223

In the Matter of the GUARDIANSHIP
OF P.T.

State of North Dakota, Petitioner
and Appellee

v.

P.T., Child; J.W., Mother; J.V., Father;
R.P., Legal Guardian; J.P., Legal
Guardian; Sharla Price, Guardian ad
litem, Respondents.

R.P. and J.P., Appellants.

In the Matter of the Guardianship
of M.T.

State of North Dakota, Petitioner
and Appellee

v.

M.T., Child; J.W., Mother; G.M., Father; R.P., Legal Guardian; J.P.,
Legal Guardian; Respondents.

R.P. and J.P., Appellants.

In the Matter of the Guardianship
of A.M.-T.

State of North Dakota, Petitioner
and Appellee

v.

A.M.-T., Child; J.W., Mother; G.M., Father; R.P., Legal Guardian; J.P., Legal Guardian; Respondents.

R.P. and J.P., Appellants.

In the Matter of the Guardianship
of R.T.

State of North Dakota, Petitioner
and Appellee

v.

R.T., Child; J.W., Mother; J.G., Father;
R.P., Legal Guardian; J.P., Legal

Guardian; Sharla Price, Guardian ad
Litem, Respondents.

R.P. and J.P., Appellants.

In the Matter of the Guardianship
of S.M.

State of North Dakota, Petitioner
and Appellee

v.

S.M., Child; J.W., Mother; G.M., Father; R.P., Legal Guardian; J.P.,
Legal Guardian; Respondents.

R.P. and J.P., Appellants.

Nos. 20140166, 20140167, 20140168,
20140169, 20140170.

Supreme Court of North Dakota.

Dec. 18, 2014.

Alexander J. Stock, Assistant State's Attorney, Bismarck, ND, for petitioner and appellee; submitted on brief.

Bryan D. Denham, Pampa, TX, for respondents and appellants R.P. and J.P.; submitted on brief.

McEVERS, Justice.

[¶ 1] R.P. and J.P. appeal from a juvenile court order terminating their guardianship. We affirm the juvenile court's findings that it is in the best interests of the children to terminate the guardianship.

I

[¶ 2] On April 5, 2013, the State petitioned for termination of R.P. and J.P.'s guardianship of their grandchildren, P.T., M.T., A.M.-T., R.T., and S.M., alleging the children were deprived, the children had been in foster care for 450 out of the previous 660 nights, and it was in the best interests of the children that the guardianship be terminated. A combined hearing was held on the petitions for termination of guardianship and the petitions for termination of parental rights of the children's parents, who failed to appear. At the hearing, various social workers of Burleigh County Social Services, including Sharon Dockter, testified on behalf of the State. R.P. and J.P. and several of the children also testified.

[¶ 3] After the hearing, the judicial referee granted the petitions terminating J.P. and R.P.'s guardianship, as well as the parental rights. Specifically, as is pertinent to this appeal, the judicial referee found 1) the children had been in foster care since May 18, 2011; 2) the children were deprived and the causes of deprivation are likely to continue, and the children are suffering or will probably suffer serious physical, mental, or emotional harm; 3) the affidavits of Sharon Dockter list the reasons the children are deprived, the rea-sonable efforts made, and the reasons the deprivation is likely to continue; and, 4) termination of the guardianship is in the children's best interests. R.P. and J.P. requested review of the judicial referee's findings regarding the termination of their guardianship under N.D. Sup. Ct. Admin. R. 13. After reviewing the matter, the district court, acting as the juvenile court, adopted the judicial referee's findings, and also adopted and incorporated the best interests of the child analysis from the State's post-hearing brief as its own findings.

[¶ 4] On appeal, R.P. and J.P. argue they have proven, by a preponderance of the evidence, that it is in the children's best interests to continue the guardianship.

II

[¶ 5] We do not set aside a juvenile court's findings of fact unless clearly erroneous. *In re T.T.*, 2004 ND 138, ¶ 5, 681 N.W.2d 779. "A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law." *Akerlind v. Buck,* 2003 ND 169, ¶ 7, 671 N.W.2d 256. "On appeal, we review the files, records, and minutes or the transcript of the evidence, and we give appreciable weight to the findings of the juvenile court." *In re B.B.,* 2010 ND 9, ¶ 5, 777 N.W.2d 350 (citation omitted) (quotation marks omitted). Further, we give due regard to the juvenile court's opportunity to judge the credibility of the witnesses. N.D.R.Civ.P. 52(a)(6).

[¶ 6] Under N.D.C.C. § 27-20-48.4(2), "[a]ny party to the proceeding in which the child's status was adjudicated,

the director, or the child, ... may petition for removal of a guardian on the grounds that the removal would be in the best interest of the child." The best interests factors of N.D.C.C. § 14-09-06.2(1) are applied in guardianship proceedings. *In re Guardianship of Barros*, 2005 ND 122, ¶ 4, 701 N.W.2d 402. The burden of proof is on the guardian to establish, by a preponderance of the evidence, that the guardianship should continue. *Id.* at ¶ 19.

[¶ 7] "The findings and order of the judicial referee have the effect of the findings and order of the district court until superseded by a written order of a district court judge." N.D. Sup. Ct. Admin. R. 13, § 10(a). A district court judge, acting as the juvenile court, must review the judicial referee's decision de novo. *Interest of J.A.H.*, 2014 ND 196, ¶ 9, 855 N.W.2d 394; *Interest of B.F.*, 2009 ND 53, ¶ 12, 764 N.W.2d 170; N.D. Sup. Ct. Admin. R. 13, § 11(b). "The juvenile court judge is given the ultimate authority to be the factfinder and adjudicator and to issue a final disposition." *Interest of B.F.*, at ¶ 15.

[¶ 8] This case has a somewhat unusual posture. R.P. and J.P. were the legal guardians of the children prior to Burleigh County Social Services becoming involved. The deprivation alleged refers not only to the actions or inaction of the parents, but those of R.P. and J.P. as well. The petitions to terminate the guardianship alleged facts, if proven, sufficient to terminate the guardianship, as if the guardians had rights equal to the parents. The children were removed from the guardians' home after being adjudicated deprived. In this case, the judicial referee found the children were deprived, the causes of deprivation are likely to continue or will not be remedied, and the children are suffering or will probably suffer serious physical, mental, moral, or emotional

harm. The judicial referee further found, "it is in the children's best interests for the parental rights and the guardianship to be terminated." The judicial referee incorporated by reference the affidavits of Burleigh County social worker, Sharon Dockter, as well as the reports of the guardian ad litem, but did not include any analysis of the best interests factors. The district court judge, acting as the juvenile court, adopted the judicial referee's decision as her own under N.D. Sup. Ct. Admin. R. 13, § 11(b)(1). Additionally, the juvenile court adopted the best interests factor analysis contained in the State's post-hearing brief. Specifically, the juvenile court found:

[I]t is in the best interest of the children that the guardianship be terminated. Had I written the order concerning termination of the guardianship, I would have incorporated best interest findings as suggested by the petitioner in the petitioner's post-hearing brief.

I am adopting the best interest findings as set out in the petitioner's post-hearing brief, and with that addition, I adopt the Judicial Referee's Findings of Fact and Order.

The juvenile court made no separate best interests factor findings or analysis of its own. We prefer trial courts prepare their own findings of fact, but will not reverse solely because the court adopts proposed findings prepared by counsel. *Gonzalez v. Gonzalez*, 2005 ND 131, ¶ 4, 700 N.W.2d 711 (discussing purpose of Rule 52(a), N.D.R.Civ.P.) (citations omitted).

Rule 52(a), N.D.R.Civ.P., requires a court to find facts specially and state its conclusions of law separately when an action is tried on the facts without a jury. The court must make findings of fact and conclusions of law which provide sufficient specificity to enable a reviewing court to understand the factual determinations made by the trial court

and the basis for its conclusions of law and decision. The court's findings of fact ... should be stated with sufficient specificity to assist the appellate court's review and to afford a clear understanding of the court's decision.

*Interest of T.R.C.*, 2014 ND 172, ¶ 9, 852 N.W.2d 408 (citations omitted) (quotation marks omitted).

[¶ 9] We are aware that judicial resources are strained, and referring to another document, rather than restating it, may provide a time savings to the court. While there is no absolute proscription to incorporating a document by reference, we emphasize here that it is not the preferred method and does not replace the importance of making findings. *See Mahoney v. Mahoney*, 516 N.W.2d 656, 659 (N.D.Ct. App.1994) (noting trial court incorporated by reference oral findings made at a hearing); *Fed. Land Bank of Saint Paul v. Anderson*, 401 N.W.2d 709, 711–12 (N.D. 1987) (recognizing affidavit may incorporate by reference other documents). *Contra Daniels v. Ziegler*, 2013 ND 157, ¶ 13, 835 N.W.2d 852 (disapproving practice of incorporating arguments made in an appellate brief previously presented to the district court). The affidavits of Sharon Dockter and the guardian ad litem's reports incorporated by reference discuss facts that would clearly support termination of the guardianship under the best interests analysis. For example, Sharon Dockter's affidavit indicates R.P. and J.P. have not worked with the agency on services offered to reunify the children for almost two years. The children had been in foster care for 663 nights at the time of the affidavit, and Dockter testified at trial the time had been 1,022 nights. Rather than work with the agency, R.P. and J.P. dispute the children were maltreated. A guardian ad litem report states:

.... the Guardians ... have not followed the recommendations stemming from the Physical and Sexual Abuse, along with the Psychological Maltreatment. There is no indication that ... [R.P.] or [J.P.] will follow through with any of the mandates that were made after the CPS findings; ...

.... It appears ... the guardians ... have only become angrier and less willing to work towards the best interest of the children.

[¶ 10] Under N.D.C.C. § 27–20–44(1)(c)(2), the court may terminate parental rights if the child is deprived and the child has been in foster care for at least 450 out of the previous 660 nights. A guardian does not have superior rights to that of a parent. *See* N.D.C.C. § 27–20–48.2 (describing the powers and duties of a guardian). The referee terminated the guardianship on three separate and independent grounds. The guardians do not dispute that the children were deprived or that they had been in foster care for 1,022 nights. The guardians argue, that despite facts sufficient to terminate parental rights, it is in the children's best interests the guardianship continue because they claim they have the ability to care for the children, they completed a class from MHA Nation Social Services, and two of the children indicated the wish to return to the guardians' care. Essentially, the guardians are asking this Court to reweigh the evidence, in regard to the best interests factors.

[¶ 11] The juvenile court adopted the best interests factors as argued by the State, which includes:

In this case, these ties are lacking due to the guardians' failure to attend regular visits with the children. For several months following the removal of the children, no visits took place because the guardians maintained they were not in-

terested in having the children returned. When visits did begin, they failed to arrange a significant number of visits with the family safety center. They were authorized to attend two visits per month with the children.

. . . . In total, the guardians have visited with the children only 11 times since they were removed from the guardians' care in 2011 . . . .

. . .

The children have never been in a stable environment during the duration of their lives . . . .

After being removed from the guardians' care, the instability continued due to the fact that all of the children are now in foster care and have been for over 1000 nights. This case has lingered on and caused distress for the children as reflected in the guardian ad litem reports and the testimony of the children's foster parents . . . .

Also contributing to the instability of the children's situation is the inconsistency of the guardians' visits . . . .

. . .

The next factor is to moral fitness of the guardians. In this factor, the guardians' performance has been abysmal. The social workers, therapist, and foster parents have all confirmed that the stories of sexual abuse, physical abuse, and emotional abuse by the guardians have remained consistent since the children have been removed, and the therapist and social worker also testified that further information continued to be disclosed. The guardians have failed to take responsibility for their actions that have harmed the children, and they have failed to address the issues through following the directives of Burleigh County Social Services.

. . .

The next factor is evidence of domestic violence. The statutory presumption against awarding custody to a parent who has perpetrated domestic violence prevents an abusive parent from obtaining custody of the child unless the abusive parent proves by clear and convincing evidence that the best interests of the child require the abusive parent to participate in or have custody . . . . This particular case is rife with evidence of ongoing physical, sexual, and emotional abuse towards the children by the guardians. This is supported by the testimony of Jenn Grabar who stated that the disclosures of the children upon first contact were that "grandma's nasty" and touches their private parts, that there was hitting, . . .

. . .

Aside from the probable ability of the guardians to feed, clothe, and provide necessary medical treatment for the children, they have not provided any evidence that having the children's custody returned to them would be in the children's best interest. All of the factors weigh against preserving the guardianship. Instead, the evidence from the State establishes that the termination of the guardianship is in the children's best interest.

[¶ 12] In adopting the State's best interests analysis as its own, the district court also adopted any errors in law or fact advocated by the State. The best interests factors adopted by the juvenile court from the State's post-hearing brief are not a current recitation of the best interests factors. In the State's best interests factor analysis, it applied the version of N.D.C.C. § 14–09–06.2 cited in *In re Guardianship of Barros*, 2005 ND 122, ¶ 4, 701 N.W.2d 402. The factors were amended in 2009, prior to the commencement of this action. *See* N.D.C.C. § 14–09–06.2

(Aug. 1, 2009). Accordingly, the best interests factors applied by the State, and adopted by the district court, do not correlate with the current factors. However, applying the facts here to the current version of the best interests factors under N.D.C.C. § 14–09–06.2(1) would not yield a different result. It is clear from a review of the record the juvenile court did not err in finding it is not in the best interests of the children to continue the guardianship. We will not set aside a correct result based on correct reasoning under the wrong law if the result would be the same under the correct law. *See Investors Title Ins. Co. v. Herzig*, 2010 ND 169, ¶ 40, 788 N.W.2d 312 (citations omitted). We conclude the juvenile court reached the right result, albeit under an outdated version of the best interests factors.

### III

[¶ 13] We hold the juvenile court's findings are not clearly erroneous, and affirm the juvenile court's order terminating the guardianship.

[¶ 14] WILLIAM A. NEUMANN, S.J., CAROL RONNING KAPSNER and DANIEL CROTHERS, JJ., concur.

[¶ 15] The Honorable WILLIAM A. NEUMANN, S.J., sitting in place of SANDSTROM, J., disqualified.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 16] I reluctantly concur in the result reached by the majority. My reluctance is based on the majority's acceptance of the procedure whereby the juvenile court adopted the analysis of the best interest factors set forth in the State's post-hearing brief. In doing so it notes that while this is not the preferred method, there is no absolute proscription to incorporating a document by reference in the court's opinion and cites to *Mahoney v. Mahoney*, 516 N.W.2d 656, 659 (N.D.Ct.App.1994), in which the court of appeals allowed a trial court to incorporate by reference its oral findings made at hearing. I believe there is a vast difference in incorporating findings made by the court on the record at hearing and incorporating by reference the analysis made in the brief of an attorney.

[¶ 17] The majority also cites to *Gonzalez v. Gonzalez*, 2005 ND 131, ¶ 4, 700 N.W.2d 711. *Gonzalez* in turn cited to *Schmidkunz v. Schmidkunz*, 529 N.W.2d 857, 859 (N.D.1995), where the trial court adopted as its opinion the defense counsel's post-trial brief. We observed:

> Because such an approach may fail to foster the appearance of fairness and impartiality in our courts, and may therefore reduce confidence in our judicial system, we cannot approve it as a practice. It is preferable that the court, if it chooses to issue a written memorandum opinion, state in its own words the rationale and basis for its decision.

[¶ 18] I remain convinced of that concern and I fear this decision, under the guise of strained judicial resources and time savings to the court, will only erode the public's confidence in our judicial system. Justice Paul Sand, writing for the Court said: "We cannot permit the court's previous admonitions to be disregarded or to be treated as a *bruten fulmen* (empty noise) which is what it would be if we were to merely repeat a threat to enforce." *McCullough v. Swanson*, 245 N.W.2d 262, 265 (N.D.1976).

[¶ 19] Nevertheless, at the risk of simply adding to the "empty noise," I reluctantly agree with the majority that under the facts on the record in this case we can affirm the juvenile court. But, perhaps the time has come to consider amending Rule 52(a), N.D.R.Civ.P., to require that all findings be prepared by the court rath-

er than assigning counsel to prepare findings or incorporating by reference findings made by someone other than the judge. *See Warner v. Johnson*, 213 N.W.2d 895, 897–900 (N.D.1973) (citing cases criticizing the practice). On appeal, we should then reject any findings which do not comply with the rule.

[¶ 20] DANIEL J. CROTHERS, J., concur.