**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**FEBRUARY 16, 2023**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 19

In the Interest of the Guardianship of G.V.

| | |
|---|---|
| C.B., | Petitioner |
| v. | |
| G.V., child, | Respondent |
| and | |
| S.V., father, | Respondent and Appellee |
| and | |
| R.F., mother, | Respondent and Appellant |

## No. 20220145

In the Interest of the Guardianship of S.V.

| | |
|---|---|
| C.B., | Petitioner |
| v. | |
| S.V., child, | Respondent |
| and | |
| S.V., father, | Respondent and Appellee |
| and | |
| R.F., mother, | Respondent and Appellant |

## No. 20220146

Appeal from the Juvenile Court of Cass County, East Central Judicial District, the Honorable Daniel E. Gast, Judicial Referee.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Kylie M. Oversen, Fargo, N.D., for respondent and appellee; submitted on brief.

Elizabeth J. Sundby, Fargo, N.D., for respondent and appellant; submitted on brief.

**Tufte, Justice.**

[¶1]  R.F. appeals from a juvenile court order appointing a guardian for R.F.'s and S.V.'s children and restricting contact and visitation between the parents and children. We affirm.

I

[¶2]  C.B. filed petitions for guardianship of G.V. and S.V., R.F.'s and S.V.'s children. R.F. is the mother, and S.V. is the father. C.B. is the children's maternal grandmother, and she lives in Fargo. Both parents were living in Florida at the time of the hearing. A judicial referee granted C.B. guardianship for three years and restricted the visitation rights of R.F. and S.V. On de novo review, the juvenile court then adopted the referee's findings and order.

[¶3]  At the time of the hearing, G.V. was eight and S.V. was four. C.B. had been taking care of the children since their births. R.F. would sometimes live with C.B., but she would come and go as she pleased, leaving the children with C.B. for extended periods. S.V. sometimes visited the children with R.F.

[¶4]  The children were in Florida for three months when R.F. took them to their paternal grandmother's house. At the request of the paternal grandmother, C.B. again took the children under her care. This was the only time when the children have not lived with C.B. R.F. was arrested shortly thereafter and was imprisoned for six months. At the time of the hearing, there was a warrant out for R.F.'s arrest. S.V. was living with his parents and was driving for a ride-share service. He was incarcerated for eighteen months ending in February 2022, the same month as the hearing.

[¶5]  Both parents wanted their children to reside in Florida, and R.F. wanted the children to live with her since she was not incarcerated. R.F. and S.V. provided the juvenile court a letter predating the guardianship petition stating their preference that in the event that they were unable to take care of the children, they wanted them to reside with their paternal grandmother in

1

Florida. Both R.F. and C.B. agreed that the children are well-behaved, happy, and healthy.

## II

[¶6]   R.F. and S.V. argue this Court should reverse both the judicial referee and the juvenile court. This Court reviews only the order of the juvenile court. "The findings and order of the judicial referee have the effect of the findings and order of the district court until superseded by a written order of a district court judge." N.D. Sup. Ct. Admin. R. 13, § 10(a). The juvenile court reviews de novo, and the findings and order survive "only to the extent" the juvenile court adopts them. *Interest of Guardianship of A.D.*, 2021 ND 205, ¶ 3, 966 N.W.2d 540. Here, the juvenile court adopted the judicial referee's entire order, so the only order remaining for this Court to review is that of the juvenile court.

[¶7]   We will not set aside a juvenile court's findings of fact unless we conclude they are clearly erroneous. *In re Guardianship of P.T.*, 2014 ND 223, ¶ 5, 857 N.W.2d 367 (citing *In re T.T.*, 2004 ND 138, ¶ 5, 681 N.W.2d 779). "A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law." *Id.* (citation omitted). "On appeal, we review the files, records, and minutes or the transcript of the evidence, and we give appreciable weight to the findings of the juvenile court." *Id.* (citation omitted). This Court does not reweigh evidence or reassess the credibility of witnesses. *Kershaw v. Finnson*, 2022 ND 165, ¶ 9, 980 N.W.2d 40.

## III

[¶8]   R.F. and S.V. argue the juvenile court abused its discretion in appointing a guardian over the children under N.D.C.C. § 27-20.1-11. A juvenile court "may appoint a guardian of a child if the court finds by clear and convincing evidence that the appointment is in the child's best interest and … [t]he child is a child in need of protection as defined under section 27-20.1-01." N.D.C.C. § 27-20.1-11(1)(d). When used in a statute, the word "may" is ordinarily understood as permissive rather than mandatory and operates to confer discretion. *Interest of C.A.R.*, 2020 ND 209, ¶ 9, 950 N.W.2d 186. A court abuses

its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *In re Guardianship & Conservatorship of Thomas*, 2006 ND 219, ¶ 7, 723 N.W.2d 384.

A

[¶9]   R.F. and S.V. argue the juvenile court erred in finding the children were in need of protection under N.D.C.C. § 27-20.1-01(3)(a). Section 27-20.1-01(3)(a), N.D.C.C, defines a "child in need of protection" as a child who:

> Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the need for services or protection is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian.

A showing that a parent is "presently incapable" of caring for a child is sufficient to demonstrate that a child is in need of protection. *In re C.R.*, 1999 ND 221, ¶ 6, 602 N.W.2d 520. This Court may also consider a parent's incarceration to determine whether a child will likely continue to be in need of protection. *Interest of A.L.E.*, 2018 ND 257, ¶ 7, 920 N.W.2d 461.

[¶10] The juvenile court found that neither parent has acted as the primary caregiver or parental figure during the children's lives. The record supports these findings. The children have lived with C.B. for all of their lives except for three months when R.F. took them to Florida. The juvenile court found that in Florida neither parent was the primary caregiver for the children; instead they lived for most of that time with their paternal grandmother. When the children were in R.F.'s care in Florida, they lived in a car for an unknown length of time. R.F. was arrested shortly after C.B. retrieved the children.

[¶11] S.V. lives in Florida with his parents and, like R.F., has never cared for the children long term and has visited the children only periodically. After R.F. spent six months in a Wisconsin jail, C.B. sent R.F. money "so she [could] eat." C.B. testified that R.F. would visit the children at C.B.'s residence but

3

habitually left without telling C.B. where she was going or when she would return.

[¶12] R.V., the paternal grandmother, cared for the children while they were in Florida. The parents identified her as the person they wanted to care for the children, but she did not seek guardianship over the children when advised to do so. She was unable to provide a safe living environment and asked C.B. to take the children from her. The court also found that the current living arrangements of both parents are temporary and that neither parent has asked that the children be returned to their custody.

[¶13] The juvenile court also considered the parents' criminal activity. R.F. had warrants out for her arrest at the time of the hearing, she has absconded from probation, and she has not been a consistent presence in the children's lives because of her criminal activity. S.V. also spent time in jail and has voluntarily left the children with C.B. since their births and has not cared for them as required by law. The juvenile court's finding that the children are in need of protection is supported by the record and is not clearly erroneous.

B

[¶14] R.F. and S.V. argue the juvenile court was clearly erroneous in its finding there was clear and convincing evidence that the guardianship was in the children's best interest. Courts apply the best interest factors of N.D.C.C. § 14-09-06.2(1) to guardianship proceedings under N.D.C.C. § 27-20.1-11. *A.D.*, 2021 ND 205, ¶ 9 (citing *In re Guardianship of P.T.*, 2014 ND 223, ¶ 6, 857 N.W.2d 367); *see also In re R.K.*, 2002 ND 111, ¶ 6, 646 N.W.2d 699. Some of these factors are:

> b.–The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.
> . . . .
> f.—The moral fitness of the parents, as that fitness impacts the child.
> . . . .
> h.–The home, school, and community records of the child and the potential effect of any change.
> . . . .

m.-Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

N.D.C.C. § 14-09-06.2(1).

[¶15] The juvenile court found the following in regard to the best interests of the children.

> Appointment of a guardian is in the children's best interest based on the findings above and the recommendation of the Guardian ad Litem. The proposed guardian, [C.B.], has and will continue to provide a stable and loving home environment for the children, which their parents have not been able to provide. [C.B.] has ensured the children attend school, get medical treatment, have enough food to eat, proper clothing, and provides a safe environment. The parents are both looking at potential jail sentences of unknown duration and will be unable to physically care for the children. Both parents are in temporary living arrangements.

The record supports these findings.

[¶16] As for the parents' ability to provide for the children, C.B. has been the children's primary caretaker since their births. The parents have generally been absent in the children's lives. Additionally, C.B. took it upon herself to enroll the children in school and paid for their daycare. The parents have never offered to reimburse C.B. for these expenses. Even during the brief period when the children were away from C.B. in Florida, they lived primarily with their paternal grandmother instead of with their parents. C.B. had to travel to Florida to retrieve the children when requested to do so by the paternal grandmother. R.F. has not maintained a steady job. C.B. also testified that S.V. has had periods in his life without employment as well.

[¶17] Regarding the moral fitness of the parents, C.B. testified that R.F. supports herself as a thief, commits fraud, maintains no job, and goes to jail as a result. Both parents have been incarcerated and have had frequent involvement in the criminal justice system. R.F. has also assaulted C.B., chased C.B. in a car, thrown rocks at G.V., and used marijuana at C.B.'s house, and she has a criminal history in at least four different states.

5

[¶18] The children's community records show that S.V. was born in North Dakota, and the children have lived most of their lives in this state. C.B. has been their primary caretaker, and all agree that the children are happy and healthy and have no psychological ailments. Generally, the parents have not been part of G.V.'s and S.V.'s lives. The juvenile court's findings were not clearly erroneous, and it did not abuse its discretion in appointing C.B. as guardian over the children.

IV

[¶19] R.F. argues the juvenile court erred when it ordered the guardianship for a period of three years. Under N.D.C.C. § 27-20.1-12(2)(f), a guardianship is effective for one year, but a court may extend the duration of a guardianship to a maximum of three years "upon a showing of good cause." In *Interest of Guardianship of J.O.*, this Court defined "good cause" under N.D.C.C. § 27-20.1-17(1), which uses the phrase in the exact same context as N.D.C.C. § 27-20.1-12(2)(f). 2021 ND 76, ¶ 16, 958 N.W.2d 149. "Good cause is a 'legally sufficient reason.'" *Id.* (citing *Good cause, Black's law Dictionary*, 274 (11th ed. 2019)). This Court upheld a finding of "good cause" when the record demonstrated that a parent failed to maintain sobriety from illegal drugs. *Id.* at ¶ 17.

[¶20] The juvenile court's finding of good cause was not clearly erroneous. As discussed, the parents have criminal histories, have used drugs, and had open criminal cases at the time of the hearing. R.F. has assaulted C.B. and has been absent from the children's lives. S.V. served eighteen months in prison and was released fifteen days before the hearing. In finding good cause, the court emphasized the parents' longstanding instability and the potential of pending and future criminal proceedings to result in further incarceration. We conclude the court did not abuse its discretion in finding good cause to extend the guardianship for three years.

V

[¶21] R.F. and S.V. argue the juvenile court erred in restricting the parents' visitation with the children. A "trial court's decision on visitation is a finding of fact and will not be reversed unless it is clearly erroneous." *Paulson v.*

*Paulson*, 2005 ND 72, ¶ 19, 694 N.W.2d 681. Generally, a court may not delegate "the power to decide questions of child custody." *Id.* at ¶ 21. Visitation may be restricted only after a showing by a preponderance of the evidence that "unrestricted visitation is likely to endanger the child's physical or emotional health." *Id.* (citing *Wigginton v. Wigginton*, 2005 ND 31, ¶ 11, 692 N.W.2d 108). A court may grant a custodial parent total discretion over the time and manner of the noncustodial parent's visitation only in "exceptional circumstances" and only if the custodial parent shows "a willingness to foster the parent-child relationship." *Taylor v. Taylor*, 2022 ND 39, ¶ 23, 970 N.W.2d 209. This Court affirmed a visitation restriction awarded by the juvenile court because of a father's history of drug use and a recent positive methamphetamine test. *Wigginton*, at ¶¶ 10, 12.

[¶22] The juvenile court found both parents are a flight risk. C.B. testified that R.F. once asked to see the children and promised she would not take them, but instead she took the children to Florida. In another instance, R.F. attempted to take G.V. from her school while a guardianship hearing was being held. Additionally, both parents had open criminal cases when this case was before the juvenile court. The court also considered uncontradicted testimony that C.B. has acted to facilitate relationships between the parents and the children, including arranging telephone contact when the parents were incarcerated and sending photographs of the children. The juvenile court's finding of exceptional circumstances is not clearly erroneous.

VI

[¶23] We affirm.

[¶24] Jon J. Jensen, C.J.
　　　Daniel J. Crothers
　　　Lisa Fair McEvers
　　　Jerod E. Tufte
　　　Douglas A. Bahr

7