FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
JULY 19, 2023
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 135

In the Interest of G.R.D., a child

State of North Dakota,                                      Petitioner and Appellee

    v.

G.R.D., a minor child,                                                  Respondent

    and

A.D., mother,                                      Respondent and Appellant

## No. 20230023

Appeal from the Juvenile Court of Grand Forks County, Northeast Central Judicial District, the Honorable Donald Hager, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Madison E. Gruber, Assistant State's Attorney, Grand Forks, ND, for petitioner and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for respondent and appellant.

**Crothers, Justice.**

[¶1]   A.D. appeals on behalf of her son, G.R.D., from an order issued by the Grand Forks County Juvenile Court. She argues the court erred by placing G.R.D. in the custody of the Division of Juvenile Services. We affirm the court's order.

I

[¶2]   On September 2, 2022, G.R.D. was charged with committing the delinquent act of simple assault on his mother. He was detained at the Grand Forks County Juvenile Detention Center and subsequently adjudicated as a delinquent child. He remained in his mother's custody and was placed on supervised probation for 12 months and ordered to participate in drug court.

[¶3]   On November 3, 2022, G.R.D. was detained based on allegations he violated conditions of probation and new offenses. The juvenile court ordered that G.R.D. remain at the juvenile detention center and undergo diagnostic testing. On November 23, 2022, the juvenile court conducted an initial appearance on the probation revocation petition and ordered G.R.D to home detention in the custody of his mother. G.R.D. was alleged to have used methamphetamine within hours of being released into his mother's custody.

[¶4]   On November 28, 2022, the juvenile court conducted a detention hearing and ordered that G.R.D. be detained for again violating his probation. After a detention review hearing on December 27, 2022, the juvenile court found G.R.D. remained a delinquent child and ordered him into the custody of the Division of Juvenile Services (DJS) for up to 12 months. The court also ordered DJS to place G.R.D. in a treatment center as soon as possible. A.D. timely appealed.

II

[¶5]   A.D. argues the juvenile court erred by granting the DJS custody of G.R.D. instead of her, and the court's findings were based on stale evidence.

1

[¶6]   This Court's standard of review for a juvenile court's order is well established:

> "We will not set aside a juvenile court's findings of fact unless we conclude they are clearly erroneous. *In re Guardianship of P.T.*, 2014 ND 223, ¶ 5, 857 N.W.2d 367 (citing *In re T.T.,* 2004 ND 138, ¶ 5, 681 N.W.2d 779). 'A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if there is no evidence to support it, if it is clear to the reviewing court that a mistake has been made, or if the finding is induced by an erroneous view of the law.' *Id.* (citation omitted). 'On appeal, we review the files, records, and minutes or the transcript of the evidence, and we give appreciable weight to the findings of the juvenile court.' *Id.*"

*Interest of Guardianship of G.V.*, 2023 ND 19, ¶ 7, 985 N.W.2d 655.

[¶7]   Under N.D.R.Civ.P. 52(a), we do not re-weigh conflicting evidence, and we give due regard to the trial court's opportunity to judge the credibility of witnesses. *See Interest of J.S.L.*, 2009 ND 43, ¶ 12, 763 N.W.2d 783; *Brandt v. Somerville*, 2005 ND 35, ¶ 12, 692 N.W.2d 144. "A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the trial court." *Brandt,* at ¶ 12. The court's findings should provide "sufficient specificity to enable a reviewing court to understand the factual basis for the trial court's decision." *Id.*

A

[¶8]   A.D. argues the juvenile court erred by ordering G.R.D. into the DJS's custody rather than leaving him in her custody.

[¶9]   A.D. requested that G.R.D. remain in her custody rather than being placed into the DJS's custody. A.D. testified she has tried to provide G.R.D. with proper care by submitting applications to multiple treatment centers and taking him to see psychiatrists. She agreed G.R.D. needs to go to a treatment center. She also testified she would like custody over him while he is in treatment, and if she had custody she would not remove him until he finished his treatment. She testified she has little faith the DJS would be more helpful

than her, but agreed G.R.D. has been unsuccessful with treatment and complying with his probation conditions while in her custody.

[¶10] Juvenile courts have graduated authority to order treatment for delinquent children. Under N.D.C.C. § 27-20.4-17(1) a court may take any action necessary to ensure a delinquent child receives proper treatment or rehabilitation, repair any harm caused by the child, and protect the community. The law allows a court to place a child in DJS's custody under certain circumstances:

> "If the court cannot find a less restrictive alternative, the court may commit a child to the division of juvenile services. A risk and needs assessment must be the basis for the determination of commitment to the division of juvenile services. The court only may commit a child to the division for a new delinquent offense. Unless all probation extensions have been exhausted, the child's risk and treatment needs continue to be high and the child is refusing to comply with the terms of probation, the court may not commit a child for a violation of the terms of probation."

N.D.C.C. § 27-20.4-17(3) (2021).[1]

[¶11] The DJS is required to take custody of a delinquent child when ordered by a juvenile court. N.D.C.C. § 27-21-02. Upon taking custody the DJS must provide the child with diagnostic testing and evaluations to determine what treatment and rehabilitation is in the child's best interest. N.D.C.C. § 27-21-02. After testing and evaluation the DJS may place the child in the care of a relative, guardian, or foster home, place the child at the North Dakota youth correctional center, or place the child in a different treatment and rehabilitation institution for children or young adults. N.D.C.C. § 27-21-02(1)-(3). Procedures for a juvenile's placement into a more restrictive setting may be regulated by the juvenile court. N.D.C.C. § 27-21-02.1.

---

[1]N.D.C.C. § 27-20.4-17(3) was amended by S.L. 2023, (H.B. 1160), effective April 13, 2023. The version of the statute in effect during the juvenile court hearing applies to this appeal because amended statutes generally are not applied retroactively unless legislative intent or history shows otherwise. N.D.C.C. § 1-20-10; *Senger v. Senger*, 2022 ND 229, ¶11, 983 N.W.2d 160.

[¶12] Here, the juvenile court had authority under N.D.C.C. § 27-20.4-17(3) and N.D.C.C. ch. 27-21 to grant custody of G.R.D. to the DJS. After that grant of custody, the DJS had authority under N.D.C.C. § 27-21-02 to place G.R.D. in the care of enumerated individuals or institutions. The court acted within its legal authority by granting custody to the DJS, and permitting the DJS to place G.R.D. in an appropriate facility. The court did not misapply the law by ordering G.R.D. into the DJS's custody.

B

[¶13] A.D. argues the juvenile court erred because G.R.D.'s risk assessment was "old and factually incorrect." She claims that the court erred by relying on an assessment and screening done in July 2022 when the hearing was conducted on December 27, 2022, and that the documents were factually incorrect because G.R.D.'s application for a particular placement no longer was pending.

[¶14] At the most recent detention hearing, G.R.D.'s probation officer testified about G.R.D.'s history with probation and detention. The officer testified she believes it is necessary for the DJS to have custody of G.R.D. so he will fully participate in treatment and recovery programs. She expressed doubts that A.D. would follow through with G.R.D.'s treatment. The officer testified that G.R.D.'s multiple noncompliances with home detention and probation shows A.D. cannot handle her son's problems alone. The officer also testified that, if A.D. has custody of G.R.D., she could place him in a treatment center and check him out whenever she or G.R.D. wants.

[¶15] In addition to the probation officer's testimony, the State introduced G.R.D.'s juvenile predispositional report. The document reported G.R.D.'s risk assessment score was "high." The areas contributing to G.R.D.'s high risk and need for treatment were based on checkbox items including his history of offenses, attitude, mental health, aggression, community or peers, skills, alcohol and drug use, and "family issues." The report stated "DJS custody is recommended; all community options have been exhausted through Juvenile Court and [G.R.D.] needs a higher level of treatment and rehabilitation."

4

[¶16] After the hearing, the juvenile court found G.R.D. needs treatment. The court also found G.R.D. has a history of being placed on probation and violating his probation conditions. It found that G.R.D.'s risks and needs are high, and that A.D. has been unable to control G.R.D.'s behaviors while on probation in her custody. The court found probation extensions have been exhausted and no less restrictive alternatives exist to assist G.R.D. with treatment. Based on these findings the juvenile court ordered removal of G.R.D. from A.D.'s custody and put him in the custody of the DJS, as permitted under N.D.C.C. § 27-20.4-17(3). The court also ordered the DJS place G.R.D. into a treatment center as soon as possible, which is allowed under N.D.C.C. § 27-21-02.

[¶17] This Court will not reverse findings unless they are clearly erroneous. The findings here are supported by evidence, including testimony from the probation officer and A.D. The juvenile court also relied on G.R.D.'s predispositional report, which accounted for his behavioral history but had an out-of-date reference to a pending residential treatment application. Because the juvenile court's findings are supported by substantial evidence, and because the out-of-date information was not material to the juvenile court's disposition, the court did not clearly err in ordering G.R.D. be placed in the custody of the DJS.

### III

[¶18] The juvenile court did not err in ordering G.R.D. be placed in the custody of the DJS. We affirm the juvenile court's order.

[¶19] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr